MARTIN A. SISSON and NICHOLAS ACKER, use of ROBERT D. MORRISON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Reference and Award—Voluntary Payment—Amicable Adjustments of Disputes.*

A claim for extra work by the appellants, as contractors for supplying the marble and doing the marble work on the City Hall of the ap-

pellee, was under a provision of the original contract between the parties, referred for adjustment to the architect of the City Hall, whose valuation was not accepted by the Building Committee of the appellee, and they refused to certify, that the amount awarded the appellants was legally and justly due, or to give an order for the money, which discretion was vested in them by an ordinance of the appellee. Afterwards by mutual consent, the matter in dispute between the committee and the appellants, was referred to M., who made his award in favor of the appellants for a less amount than had been awarded by the first referee. Diminished by the committee's deduction of the cost of a railroad, which had been constructed at the instance of the appellee, and used by the appellants for the delivery of their material at the building of the City Hall, the amount awarded was paid to the appellants and accepted by them in full settlement of their claim for extra work against the appellee. In an action brought by the appellants against the appellee, to recover the difference between the sum awarded by the official architect and that awarded by M., it was HELD:

1st. That both parties were concluded with respect to the amount ascertained to be due by the award of the last referee.

2nd. That the payment for the railroad was made under a demand of right, and the appellants could not recover back the sum so voluntarily paid.

The law always favors compromises and amicable adjustments of disputes, rather than compel parties to resort to litigation.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial before the Court without a jury, the plaintiffs offered the following prayers:

1. If the Court shall find from the evidence, and the admitted facts, that the contract offered in evidence for the furnishing of the marble, and for the doing of the marble work on the New City Hall, was duly executed by the Building Committee of said New City Hall and the plaintiffs, and if the Court shall further find, that the plaintiffs

did extra work on said New City Hall, as stated and set forth in the agreed statement of facts and in the evidence, and if it shall further find, that George A. Frederick, Esq., at the time of the execution of said contract, and of the doing of said extra work, was the architect of the said New City Hall, and if the Court shall further find, that the said George A. Frederick measured the said extra work, and according to and in pursuance of the provisions of said contract, valued the said extra work, at the sum of $46,852.29, that then upon such valuation by said Frederick, the defendant became and was indebted to the plaintiffs for and on account of said extra work, in the said sum of $46,852.29, and the verdict must be for the plaintiffs for such sum as the Court shall find to be the difference between said sum of $46,852.29, and such sum as the Court may find has actually been paid to the plaintiffs by the defendant, on account of said extra work, less the sum which the Court may find from the evidence was received by the plaintiffs for the material of the railroad track mentioned in the evidence; and this, notwithstanding the Court may find the agreement of submission to A. B. Mullett, and the decision of the referee thereunder, and the payment and acceptance of the amount of the award of said referee, as mentioned in the evidence and the agreed statement of facts; and notwithstanding the Court may further find that the plaintiffs agreed with the said Building Committee, that the cost of laying the railroad track, mentioned in the evidence, to wit, the sum of $2506.04, should be deducted from the sum due the plaintiffs under the said contract.

2. That the agreement of submission to A. B. Mullett, mentioned in the evidence and in the agreed statement of facts as having been made between the Building Committee of the defendant and the plaintiffs, is of no effect, and is not binding on the plaintiffs, as the same was made by the said Building Committee, without authority in fact

or in law, and the Court must disregard the said agreement of submission, and all proceedings thereunder, in making up its verdict.

3. That the agreement of submission to A. B. Mullett, mentioned in the evidence, is of no effect, and is not binding on the defendant, there having been no consideration for same, and the Court must disregard the said agreement of submission, and all proceedings thereunder, in making up its verdict.

4. That the agreement mentioned in the evidence between the Building Committee of the defendant and the plaintiffs, by which it was agreed that the said Building Committee should deduct from the sum due the plaintiffs under the contract offered in evidence, the cost of laying the railroad track mentioned in the evidence, to wit, the sum of $2506.04, is of no effect, and is not binding on the plaintiffs, as the same was made by the said Building Committee without authority in fact or in law; and the Court must disregard the said agreement in making up its verdict, except in so far as the Court may allow the defendant a credit for the amount received by the plaintiffs for the old material of said track.

5. That the agreement mentioned in the evidence between the Building Committee of the defendant and the plaintiffs, by which it was agreed that the Building Committee should deduct from the sum due the plaintiffs under the contract offered in evidence, the cost of laying the railroad track mentioned in the evidence, to wit, the sum of $2506.04, is of no effect, and is not binding on the plaintiffs, the same having been without consideration, and the Court must disregard the same in making up its verdict, except in so far as the Court may allow the defendant a credit for the amount received by the plaintiffs for the old material of said track.

6. If the Court shall find that at the time of the giving of the receipt mentioned in the evidence by the plaintiffs

to the defendant, the plaintiffs agreed to allow the Building Committee to retain from the sum due the plaintiffs under the contract mentioned in the evidence, the sum of $2506.04, being the cost of laying the track mentioned in the evidence; and if the Court shall further find, that the plaintiffs consented to such retention and gave the said receipt in order to induce the said Building Committee to make a settlement with the plaintiffs under their said contract, which the said committee otherwise refused to do, then the said agreement for the retention of said sum of $2506.04, and the giving of said receipt, were not voluntary, and do not bind the plaintiffs; and the Court in making up its verdict must disregard the said agreement, except in so far as the Court may allow the defendant a credit for the amount received by the plaintiffs for the old material of said track.

7. If the Court shall find that at the time of the giving of the receipt mentioned in the evidence by the plaintiffs to the defendant, the plaintiffs agreed to allow the Building Committee to retain from the sum due the plaintiffs under the contract mentioned in the evidence, the sum of $2506.04, being the cost of laying the track mentioned in the evidence.    And if the Court shall further find, that the plaintiffs consented to such retention and gave the said receipt for the sole purpose of inducing the said committee to make a settlement with the plaintiffs under their said contract, then the said agreement for the retention of the said sum of $2506.04, and the giving of the said receipt, were not voluntary, and do not bind the plaintiffs, and the Court in making up its verdict must disregard the said agreement, except in so far as the Court may allow the defendant a credit for the amount received by the plaintiffs for the old material of said track.

The Court, (DOBBIN, J.,) rejected all of the said prayers. The plaintiffs excepted, and the finding and judgment being for the defendants, the plaintiffs appealed.

The cause was argued by consent before BARTOL, C. J., ALVEY and ROBINSON, J., and the decision was participated in by BOWIE, BRENT and MILLER, J.

*Robert D. Morrison,* for the appellants.

The appellants contend that the agreement to submit to the arbitration of Mullett was absolutely void, and that the appellants are entitled to recover the difference between the valuation of the official architect and that of Mullett, because—

The agreement to submit was without consideration.

When the work was done and valued by the architect, the plaintiffs had a fixed, definite, and established claim. There was nothing to dispute about, and nothing to submit. Their claim was liquidated. The valuation of Frederick was final and conclusive. *Mosby vs. Leeds,* 3 *Call,* (*Va.,*) 380; *Wilson vs. York & Md. Line R. R.,* 11 *G. & J.,* 58; *Ramsburg vs. McCahan,* 3 *Gill,* 341; 82 *Penn.,* 267; *McAuley vs. Carter,* 22 *Ill.,* 53; *Oakes vs. Moore,* 24 *Me.,* 214; *Robinson vs. Fiske,* 25 *Ib.,* 401; *Baird vs. United States,* 6 *Otto,* 430; *Wehr, et al. vs. Germ. Evan. Luth. St. Matthew's Cong. of Balt.,* 47 *Md.,* 177.

The agreement to submit to the arbitration of Mullett was void, for want of mutuality.

The Building Committee had no power or authority to submit the rights of the city to the decision of a stranger, and the city would not have been bound to pay the plaintiffs any more than Frederick's valuation, if that of Mullett's had been greater. *Morse on Arbitration,* 376–380; *Fenbish vs. Hall,* 8 *Maine,* 315; *Lamar vs. McNamee,* 10 *G. & J.,* 116; 1 *Dillon on Mun. Corp.,* 381; *Freeman on Judgments, secs.* 116, 117, 159, *and authorities there cited,* (*2nd Ed.;*) *M. & C. C. of Balt. vs. Reynolds,* 20 *Md.,* 1; *Munn vs. Richardson,* 66 *Ill.,* 481; *M. & C. C. of Balt. vs. Eschbach,* 18 *Md.,* 276; *Porter vs. M. & C. C. of Balt.,* 18 *Md.,* 284–289: *Horn vs. M. & C. C. of Balt.,* 30 *Md.,* 218;

Sisson & Acker *vs.* Mayor & C. C. of Balto.

*St. John's College vs. State*, 23 *Md.*, 63; *Md. Hospital vs. Foreman*, 29 *Md.*, 524; *Kirkley vs. M. & C. C. of Balt.*, 29 *Md.*, 111.

As to how corporations may submit to arbitration, see *Redman on Awards*, 8.

The fact that the sustension of this agreement of submission would result to the pecuniary advantage of the city cannot influence the decision. *Paine vs. France*, 25 *Md.*, 172; *M. & C. C. of Frederick vs. Groshon*, 30 *Md.*, 436; *Perkins vs. Proctor*, 2 *Wilson*, 382, 384.

No party can be estopped by mere acquiescence, unless others have acted upon that acquiescence to their detriment. *Cecil vs. Cecil*, 19 *Md.*, 72, 79; *Alexander vs. Walter*, 8 *Gill*, 247; *Viner's Abridg't, Title Estoppel*, sec. A, 2; *Bramble, use of State vs. Twilley*, 41 *Md.*, 435; *Horner vs. Grosholz*, 38 *Md.*, 520; 14 *California*, 280, 366–7, &c.; *Bigelow on Estoppel*, 47; *Cumberland Coal and Iron Co. vs. Sherman*, 20 *Md.*, 117; *Mayor, &c. of Balt. vs. Porter*, 18 *Md.*, 300.

The appellants contend, that the agreement between the Building Committee and the appellants—that the appellants should pay for the track, was null and void; and that the appellee has no right to retain the price of the same, because—

The said agreement, according to the theory of the plaintiffs' fourth prayer, was made by the said Building Committee without authority, in fact or in law, to make the same.

If ever there was a case of duress, this was one. It is not denied. The testimony on both sides conclusively proves it.

The so-called agreement to pay this bill for the track was certainly not voluntary. The facts in this case are much stronger than those in the case of *Chase vs. Taylor*, 4 *H. & J.*, 54; and the plaintiffs' sixth and seventh prayers adopt the language of the Court in that case. See also *Lamott vs. Bowly*, 6 *H. & J.*, 500, and cases there cited.

*James L. McLane*, for the appellee.

The appellee contends, that the acceptance of the account stated between the parties, and the payment of the amount shown by it as due to the appellants, was such a case of voluntary adjustment of disputed claims, as precluded any further litigation. *United States vs. Justice,* 14 *Wall.,* 549; *Sweeney vs. United States,* 17 *Wall.,* 75; *Mason vs. United States,* 17 *Wall.,* 73; *United States vs. Child & Co.,* 12 *Wall.,* 244; *United States vs. Clyde,* 13 *Wall.,* 35; *United States vs. Adams,* 7 *Wall.,* 463; *United States vs. Corliss St. Eng. Co.,* 1 *Otto,* 321; *Palmerston vs. Huxton,* 4 *Denio,* 166; *Baird vs. The United States,* 6 *Otto,* 430.

This is not as claimed by the plaintiffs, the case of the payment of a smaller sum than the real debt, and which this Court has held would be no bar to a further recovery. Here the very question in dispute was, as to what was the real debt due by the defendant. The contract expressly provided that the prices for certain work "should be fixed at rates *proportionate* to the contract prices for similar work." Until these prices were actually fixed, there was no ascertained amount due. So soon as the parties came to an agreement as to the prices for this extra work, the amount so agreed upon constituted the real debt. And this amount was actually paid in full by the defendant.

The plaintiffs participated equally with the defendant in the work of determining the correct valuation of the "extra work," and were furnished with all the material for testing the accuracy of Mullett's calculations. They were satisfied with the prices thus fixed, received the amount of the same, and authorized the payment on their behalf of one-half of Mullett's charge for adjusting the account.

The right of the plaintiffs to concede the claim of the defendant, in the matter of paying for the railway track is equally clear.

This railway track was laid by the Northern Central Railway Company in the summer of 1869, and was used by the plaintiffs for the transportation of more than 1500 car loads of stone. All of which by the express terms of the contract, the plaintiffs were bound to *deliver* and set in the building at contract prices, which it is conceded covered the cost of transportation. No such railway was in contemplation at the time the contract was entered into, and the payment of its cost by the defendants would have been simply a gratuity given the contractors, with no corresponding benefit to the city. For this reason the Building Committee refused to pay for the track upon the first presentation of the bill at the close of 1869, and claimed that the amount should be paid by the plaintiffs.

The Building Committee presented fairly to the plaintiffs the alternative, either to pay for the track upon a final settlement of the account, or to submit the question of their liability to pay for the same to the proper Courts for determination. At that time the plaintiffs had completed the work called for by their contract. They had been paid the large sum of $916,073.73. The adjusted balance still due them was comparatively small. They had made use of the railway track in question during the whole progress of the work, at a saving to themselves of the cost of cartage on more than fifteen hundred car loads of stone. There was no pretence that the defendant had derived one dollar of pecuniary advantage from the track. Under these circumstances, the plaintiffs decided not to submit the question of their liability to pay for the track to the Courts, but to pay for the same without further controversy. *Lester vs. M. & C. C. of Balto.*, 29 *Md.*, 419.

The agreement to refer the disputed valuation of "extra work" to A. B. Mullett, "was made to compose and settle controversies by arbitration," and if the question here was to enforce the award made by virtue of such an

agreement, this Court would regard the agreement with favor, and so construe it as to make it effective. *Md. & Del. R. R. vs. Porter,* 19 *Md.,* 470; *Cromwell vs. Owings,* 6 *H. & J.,* 10; *Ebert, Ex'r vs. Ebert, Adm'r,* 5 *Md.,* 353; *Roloson vs. Carson,* 8 *Md.,* 208.

There is nothing in the claim that such an agreement to arbitrate was not binding upon the defendant, and therefore void as against the plaintiffs. *United States vs. Corliss S. Eng. Co.,* 1 *Otto,* 321.

As to the effect of accepting the amount of the award, see *Hoogs vs. Moore,* 31 *Cal.,* 128; *Tredor vs. Scovel,* 20 *N. H.,* 174; *U. S. vs. Shrewsbury,* 23 *Wal.,* 513; *Piatt's Adm'r vs. U. S.,* 22 *Wal.,* 509; *Baxter vs. State,* 9 *Wis.,* 44; *Calkins vs. State,* 13 *Wis.,* 389; *Sholes vs. State,* 2 *Chand.,* 182.

ALVEY, J., delivered the opinion of the Court.

This is an action brought by the appellants against the appellees, for an alleged balance due on contract for extra work on the new City Hall in the City of Baltimore.

The appellants were the contractors for supplying the marble and doing the marble work on the new City Hall; and the marble was furnished and the work all done in accordance with the requirements of the contract. The work and materials were all accepted by the appellees, through their Building Committee, and the contract price, amounting to a sum between $900,000 and $1,000,000, was paid, according to the terms of the contract, excepting only the price for the extra work which had been done.

In the specifications for the building, in reference to which the proposals of the appellants for the work were made, and which proposals are referred to and made part of the contract between the parties, this provision occurs: "All extra work, additions or omissions, not referred to in the following lists, shall be valued by the architect, with reference and in proportion to the contract price."

It is admitted that after all the work was done, the extra work, embraced by the provision just cited, was measured by Mr. Frederick, the regular architect of the building, and was valued by him at the sum of $46,852.29. This valuation, however, was not satisfactory to the Building Committee, and they refused to certify to its correctness, or to give an order for the amount thus ascertained, without which the money could not be obtained from the city treasury. In order to adjust this question in an amicable way as between the Building Committee and the appellants, it was agreed, (Mr. Adams, a member, acting on behalf of the Building Committee and with their approval, and the appellants acting for themselves,) "that the list of items hereto annexed, of work not specified in the contract, but done by the said M. A. Sisson & Co., upon the City Hall Building, shall be referred to Mr. A. B. Mullett, with authority to determine according to the rule laid down in said contract, what prices for the said several items of work are justly due and payable by the said Building Committee to said M. A. Sisson & Co.; and the decision of the said A. B. Mullett shall be final and binding on both parties." Mr. Mullett is an experienced architect of the City of Washington, and it would appear that both parties were entirely willing to abide his decision, as the question between them depended alone upon the proper measurement of the work, and the ascertainment of the prices to be charged therefor, according to a rule previously agreed upon by the parties themselves. The matter of difference having been thus referred, it is admitted that the referee, on the 19th of December, 1873, made his award, allowing to the appellants the sum of $33,471.25, for the same extra work for which Mr. Frederick had allowed the sum of $46,852.29 ; being a reduction of $13,381.04.

Having thus adjusted the question in regard to the extra work, there was still another question of difference between

the appellants and the Building Committee, and that was as to who should pay the cost of a railway track, laid by the Northern Central Railway Company, under the authority of an ordinance of the city, by which stone and other material were taken to the building whilst in progress of erection. It was insisted by the Building Committee that the use of this way inured exclusively to the benefit of the appellants, as they brought all their material over this track, and which they were bound to deliver at the building, and that the city was not bound to furnish facility for the transportation and delivery of such material. And while it is not denied that the railway was so used by the appellants, they did deny for a time in a very positive manner that they were bound to pay for it. They insisted that the city authorized the making of the track of its own motion, and that there was no obligation upon them to pay the cost. This question of difference, however, was subsequently agreed between the parties; and it is admitted, that on the 9th of January, 1874, the Building Committee paid the appellants, by an order drawn on the Comptroller of the city, the sum of $32,040.96, which was all the appellants were entitled to receive for the extra work and materials furnished, including the ten per cent. retained under the contract, on the basis of the Mullett award, less the sum of $2506.20, retained to reimburse the city the cost of the railway track. This latter amount was retained by the agreement of the appellants, and the sum of $32,040.96, was received by them in full settlement of all claim under the contract for marble work, and a receipt was given to that effect. The appellants proved at the trial below that they agreed to these terms of settlement, first, because they supposed at the time, the award in regard to the extra work to be binding upon them, and secondly, that they could not get the money thus awarded them, without resort to litigation, except upon the condition of allowing for the cost of the railway ; and that they

were " willing to settle the dispute by accepting the con-
ditions to get rid of the whole matter."

This being the state of the case, there are two questions
presented :   1. Whether the appellants are concluded by
their acts in reference to the award of Mullett, the referee,
upon the claim for the extra work; and, 2. Whether they
are bound by their agreement that the cost of the rail-
way track should be retained out of the money found to be
due them by the award.   The Court below determined
both these questions against the appellants, and conse-
quently rejected all their prayers, and the judgment was
for the appellees.

1. The theory upon which the action is sought to be
maintained in respect to the extra work is, that the refer-
ence and award were not binding upon the appellants;
that they were not binding upon the appellees, because
the submission or reference was not made by competent
authority; and that being so, there was no mutuality in
the agreement of reference, and consequently the award
was simply void, and the amount ascertained by Frederick
remained the amount to which the appellants were en-
titled.   But, according to our apprehension, the case does
not depend upon the abstract question, whether the appel-
lees were bound by the submission, nor whether the ap-
pellants were bound by the award before it was acted on
and made the basis of settlement, and the money received
under it; but the real question is, whether the Building
Committee had the right to raise the question of difference
with the appellants, and if so, whether, after resorting to
the amicable means of a reference, in order to settle the
question, and the appellants have acquiesced in the result
of that reference, and received the money ascertained to
be due by the award, they can now repudiate it, and fall
back upon the claim for the amount ascertained by Mr.
Frederick before the reference was made?   The law
always favors compromises and amicable adjustments of

disputes, rather than compel parties to resort to litigation and it would be strange if, in the absence of clear evidence of fraud or mistake, the parties were not bound and con- cluded after what has taken place in respect to this award.

The Building Committee represented the city under ordinance No. 73, approved 5th August, 1868, providing for the erection of the New City Hall; and they were clothed with large supervisory powers, as well in regard to the making of contracts as to their faithful execution; and no money could be paid to any contractor for work on the building, unless he produced an order from this com- mittee certifying that it was justly due. By the 6th sec- tion of the ordinance, it was expressly provided that the Register of the city should pay the different contractors such amounts as might become due on their contracts, upon the production of an order for the same, duly signed by the Superintendent and a majority of the Building Committee, stating that the money was *legally and justly due*, and certified to as being correct by the City Comp- troller. If, upon the measurement and valuation of the extra work by the regular architect, the Building Com- mittee had reason to believe that it was not correct; that it was excessive, and largely to the prejudice of the city, their plain duty required them to withhold their approval of such measurement and valuation, and to refuse the order stating that the amount as ascertained was legally and justly due. How then was the matter to be dealt with? What mode better than, by mutual consent, to invoke the aid of some competent person to revise the measurements and calculations of the regular architect, as a means to a just and satisfactory settlement of the question? This was done by the reference, and it was not only voluntarily done, but the appellants, and also the regular architect, Mr. Frederick, attended the referee and furnished him the necessary data to enable him to make his award. The

Sisson & Acker *vs.* Mayor & C. C. of Balto.

award was made, accompanied with all the measurements and calculations upon which the conclusion was based; and there has not been the slightest attempt to point out error in the work of the referee. The award was fully acquiesced in by the parties to the reference, and the money has been paid to the appellants on the faith of it, which they were willing and actually agreed to accept in full settlement of their claim under the original contract. After such dealing, it does not lie with either party to make question of the legality of what has been done. If the award had been for the full amount as ascertained by the regular architect, or even more, and it had been accepted and acted on as the award in this case has been, it is clear the city could not maintain an action to recover back the money paid under it; and if the city would be concluded, why should not the appellants in this case be equally concluded? We think it clear that both parties are concluded with respect to the amount ascertained to be due by the award.

2. Then, as to the cost of the railroad track retained by the Building Committee, with the consent of the appellants, from the amount ascertained to be due for the extra work. As we have already stated, it is not disputed that the appellants used the road for the delivery of their material, and that the city was under no obligation to the contractors to make or pay for the road. It authorized the making of the road, and paid the Northern Central Railroad Company the cost of construction; but it insisted that as the road inured to the benefit of the appellants they should pay for it. This was certainly a proper question for adjustment between the parties concerned; and, as was said by the Supreme Court of the United States, in the case of *Sweeny vs. U. S.*, 17 *Wall.*, 75, 78, "Parties may adjust their own disputes, and when they do so voluntarily and understandingly, no appeal lies to the Courts to review their mutual decision." There is no suggestion here that

the appellants did not understand all the facts under which they were acting at the time of the settlement; and it was to avoid litigation that they agreed to settle the dispute in the manner they did. It is said that the appellants were coerced to make the settlement, inasmuch as they could not get the money due them without agreeing to be charged with the cost of the road track. However that may be, there is nothing in the case that brings it within the legal definition of duress. Repeating again the language of the Supreme Court, used in the case of *U. S. vs. Childs & Co.*, 12 *Wall.*, 244, "If the principle contended for here be sound, no party can safely pay by way of compromise any sum less than what is claimed of him, for the compromise will be void as·obtained by duress. The common and generally praiseworthy procedure by which business men every day sacrifice part of claims which they believe to be just to secure payment of the remainder would always be duress, and the compromise void." If the appellants had paid the money for cost of the road track, instead of agreeing that it should be deducted from the amount of their claim against the city, by which a final settlement was procured, there could be no color of claim for recovering it back. How does this case differ? The money was in effect paid the city, when the appellants agreed to pay the cost of the road track, and that the amount should be deducted from their claim for extra work, and that they would receive the balance in full settlement. To such a case the language of GIBBS, J., in *Brisbane vs. Dacres*, 5 *Taunt.*, 151, which has been adopted both by this Court and the Supreme Court of the United States, fully applies. He said: "We must take this payment to have been made under a demand of right, and I think, that where a man demands money of another, as matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he can never recover back the sum he has so volun-

tarily paid.   It may be, that upon a further view he may form a different opinion of the law, and it may be, his subsequent opinion may be the correct one.   If we were to hold otherwise, many inconveniences may arise; there are many doubtful questions of law; and where they arise, the party has an option, either to litigate the question, or to submit to the demand, and pay the money.   I think, that by submitting to the demand, he that pays the money, gives it to the person to whom he pays it, and makes it his, and closes the transaction between them." See *Mayor, &c., of Balto. vs. Lefferman*, 4 *Gill*, 431, and *Elliott vs. Swartout*, 10 *Pet.*, 154.   See also, the case of *Lester vs. Mayor, &c., of Balto.*, 29 *Md.*, 415.

In view of these well settled principles of the law, we think the Court below was entirely right in rejecting the several prayers offered by the appellants, and in entering judgment for the appellees, and that judgment will be affirmed.

*Judgment affirmed.*

(Decided 25th March, 1879.)