RAPLEY ET AL. *v.* MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 298, September Term, 1970.]

*Decided March 2, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Roger D. Redden,* with whom were *Piper & Marbury* on the brief, for appellants.

*David L. Cahoon, County Attorney,* with whom were *Alfred H. Carter, Deputy County Attorney,* and *H. Christopher Malone, Assistant County Attorney,* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

In June, 1969, Mr. Rapley and his sister, Mrs. Mac-Martin, the appellants here and plaintiffs below, acquired legal title to Avenel Farm, a tract in Montgomery County, Maryland (the County), some 904 acres of which they transferred in December, 1969 to Sheffield Enterprises, Inc., for a consideration of $4,069,805.72. $3,849,805.72 of the sale price was attributed to the value of the land. The property had been owned and actively farmed since 1945 by a corporation of which the appellants were the sole stockholders and since 1956 had been assessed as land devoted to agricultural use. When the deed was recorded, the appellants paid under protest a transfer tax of 6% on the sale price of the land, or $230,988.34, and then instituted suit against the County, the County Council and the County's Director of Finance in the Circuit Court for

Montgomery County for the recovery of the tax paid. From a judgment in favor of the appellees this appeal was taken.

While we propose to dispose of this case, as did the court below, on the narrow ground that taxes voluntarily paid under a mistake of law, even though paid under protest, are not recoverable in the absence of express legislative sanction, a discussion of the background of the controversy is essential to bring the problem into sharp focus.

By Chapter 52 of the Laws of 1960, the General Assembly had accorded special tax treatment to land devoted to agricultural use.[1] This provision, which is now Code (1957, 1969 Repl. Vol.) Art. 81, § 19 (b) (1), and provides in part:

> "Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if subdivided, it being the intent of the General Assembly that the assessment of farmland shall be maintained at levels compatible with the continued use of such land for farming and shall not be adversely affected by neighboring land uses of a more intensive nature."

was before us in *Supervisor of Assessments for Montgomery County v. Alsop,* 232 Md. 188, 192 A. 2d 484 (1963).

When the General Assembly was persuaded that the preferential treatment accorded farm land was being taken advantage of by speculators, steps were taken to permit the County to recapture, in appropriate cases, a part of the revenue which had been lost during the time when land had been assessed for farm use.

Chapter 633 of the Laws of 1968 amended Montgom-

---

1. An earlier effort to accomplish this by Chapter 9 of the Laws of 1956 had been held unconstitutional in *State Tax Comm'n v. Gales,* 222 Md. 543, 161 A. 2d 676 (1960).

ery County Code § 2-127 to permit the County Council to impose a tax on transfers, not to exceed

"6% of the value of the consideration for any transfer of land (excluding improvements thereon) which, while owned by the transferor, has been assessed at any time during the 5 years preceding transfer on the basis of being actively devoted to farm or agricultural use. * * *"

In October of 1968, the County Council implemented Chapter 633 by adopting Ordinance No. 6-126, which amended § 84-25 of the County Code and imposed a transfer tax of 6%

"of the value of the consideration for any transfer of land * * * which, while owned by the transferor, has been assessed at any time during the five years preceding transfer on the basis of being actively devoted to farm or agricultural use, said tax to be paid by the transferor of such land."

Property taxes on the 904 acres sold by appellants had totalled $21,707.85 in the six years commencing in 1964. Had the farm assessment not been in effect, the total of taxes on the same land for the same period would have been approximately $369,908, assuming that the sale price, after being retrospectively adjusted for inflation, was indicative of fair market value. As a result of the farm use assessment, the appellants saved about $348,-200. The County maintains, and no one denies, that even after the payment of the transfer tax, conceding the correctness of the assumption, the appellants were richer by $117,211.66, without so much as considering the saving from 1956 through 1963, when the property had also been assessed as farm land.

The appellants present a many-faceted argument in support of their contention that they are entitled to recover the transfer tax. They say that they did not own

the property at any time during the five years preceding the transfer when it was assessed as farm land; [2] that the 6% transfer tax is discriminatory, unreasonable and arbitrary; that Chapter 633 of the Laws of 1968 is a special law, impermissible under Maryland Constitution, Art. III, § 33; that Montgomery County, as a charter county, has only the powers conferred by Code, Art. 25A, § 5, and subsection (O) which deals with the taxing power, does not include the power to impose excise or transfer taxes, and cannot be supplemented by a public local law because of the prohibition contained in Constitution, Art. XI A, § 4; and finally, that since Ordinance 6-126 was adopted by the County Council at an executive rather than at a legislative session, it is invalid. For the reason which was given early on, we need not reach these contentions, because even if every one of them were correct, the appellants could not recover. Instead, we shall confine ourselves to the threshold question: Can a taxpayer who pays a local excise tax voluntarily, but under protest, bring suit for the recovery of a tax which he regards as having been illegally imposed, in the absence of a statutory provision sanctioning refunds?

Judge (later Chief Judge) Markell, in his dissenting opinion in *Wasena Housing Corp. v. Levay*, 188 Md. 383, 394, 52 A. 2d 903 (1947), observed with a note of melancholy, "Men must turn square corners when they deal

---

2. Avenel Farm had been owned from 1945 until June of 1969 by Potomac Enterprises, Inc., the sole stockholders of which were Mr. Rapley and Mrs. MacMartin. On 3 June 1969, the stockholders of Potomac voted to liquidate the corporation and to distribute the corporate assets ratably to the stockholders, the distribution being accomplished by deed dated 24 June 1969 from Potomac to the appellants. No transfer tax was paid on this transfer because there was no consideration. The appellants argue that Avenel was "assessed" as farm land on 1 January 1969, the date of finality provided by statute, and was not "assessed" again while they owned it. See, however, *Tidewater Oil Co. v. County Comm'rs of Anne Arundel County*, 168 Md. 495, 497-98, 178 A. 221 (1935), which would appear to be authority for the proposition that the assessment made on the date of finality is a continuing one, since it establishes the value on which the levy is later made. 1969 taxes, based on the farm land assessment, were paid by appellants in September, 1969.

with the Government." [3] As we shall demonstrate, no one must turn corners more squarely than a taxpayer in Maryland. Governments are inclined to protect their systems of taxation with considerable zeal in order to minimize interference or disruption, and the objective has been reached by different routes. Field, *Recovery of Illegal and Unconstitutional Taxes,* 45 Harv. L. Rev. 501, 506 (1932); Annotations, 80 A.L.R.2d 1035, 94 A.L.R. 1223.

In the federal system, litigants are prohibited from seeking injunctions which prevent the collection of taxes, 26 U.S.C. § 7421, and there, taxpayers ordinarily seek relief from a tax which has been improperly or illegally collected by an action at law to recover the payment, which has been held to be an adequate remedy, *Magness v. Loyola Fed. Sav. & Loan Ass'n,* 186 Md. 569, 47 A. 2d 769 (1946) and particularly the cases cited at 580. For all of the last century, Maryland has adhered to a practice which is the diametric opposite of that followed in the federal courts. In the absence of express statutory warrant, we have laid a heavy hand on actions brought at law to recover taxes paid, even if paid under protest, when the taxpayer made payment without seeking injunctive relief to test the validity of the imposition. Compare *Lester v. Mayor & City Council of Baltimore,* 29 Md. 415 (1868) (unsuccessful action at law) with *Mayor & City Council of Baltimore v. Porter,* 18 Md. 284 (1862) (successful injunction proceeding). Both cases challenged the validity of the same assessment, but *Lester* took the wrong road, and *Porter,* the right one.

The appellants say, and we think with some justification, that injunctive relief is simply inappropriate if a real estate transaction of the magnitude of theirs is to be consummated in an orderly fashion, citing *Oakland Cemetery Ass'n v. County of Ramsey,* 98 Minn. 404, 108 N. W. 857 (1906). Judge Markell took a somewhat simi-

---

3. The quotation is from *Rock Island, Arkansas & Louisianna R. Co. v. United States,* 254 U. S. 141, 143, 41 S. Ct. 55, 65 L. Ed. 188 (1920).

lar view in his dissent in *Wasena, supra,* 188 Md. at 396, when he said that the Court's narrow construction of the Act of 1929 [to be discussed infra] "amounts to a trick to tease taxpayers with an illusory remedy, which narrows the Acts of 1807 and 1852 [also infra] and embalms in statute form the Maryland rule as to 'voluntary' payments."

The Maryland law respecting the recovery of taxes is an interesting mosaic of statutes and decisions which evolved slowly during the nineteenth century and only commenced to offer a modern and comprehensive mechanism in 1929. In his opinion in *Wasena, supra,* 188 Md. at 395, Judge Markell suggests that it was the onslaught of the federal income tax which had made generally known to taxpayers the difference between the Maryland and the federal procedures as regards tax refunds, and brought the remedial legislation into being.

The first effort of the General Assembly to ease the plight of the harried taxpayer had appeared in Chapter 129 of the Laws of 1807:

> "WHEREAS it is represented to this general assembly, by sundry inhabitants of the state, that errors have been committed by assessors, in consequence whereof many citizens have been compelled to pay twice on the same property; therefore,
>
> "BE IT ENACTED, *by the General Assembly of Maryland,* That from and after the passage of this act, it shall and may be lawful for the levy courts in the several counties of this state, and they are hereby authorized and empowered, when they shall be satisfied that any error has arisen by assessing property not liable to be assessed by any assessor, or in any other way, to rectify such errors, and to levy and assess, in the same manner as other county charges, any sum of money which any person may have been charged with and paid in consequence of any

such error, and to pay the said sum of money, so assessed, to the person, or his order, for whom the same was levied."

The 1807 Act survived until 1852 when it was supplanted by Chapter 337 of the Laws of that year, which was codified as Code (1860) Art. 28, § 7 and as Art. 25, § 9 of the Code of 1888 and thereafter, remaining a section of Article 25, until it was repealed by Chapter 701, § 1 of the Laws of 1941. Art. 28, § 7 provided:

"They [the County Commissioners] shall, when satisfied that any error has arisen by assessing property not liable to be assessed, rectify such error and levy and pay to the proper person any money that may have been paid in consequence of such error." [4]

All the while, unhappy taxpayers were sharing their problems with the courts. In *Mayor & City Council of Baltimore v. Lefferman,* 4 Gill 425 (1846), our predecessors dealt with a situation which has some elements in common with the case before us. In 1821, the General Assembly had empowered the City of Baltimore to require owners of property abutting on Jones Falls to wall up their land. Acting under an ordinance intended to implement the grant of authority, the City notified Lefferman to construct a wall, which he did, at a cost of $1,140.73. He sued in assumpsit for the recovery of the expenditure, contending that the Act of 1821 was unconstitutional. The lower court, holding the Act to be unconstitutional, permitted Lefferman to recover. On appeal, an equally divided Court affirmed the holding of unconstitutionality, but denied recovery, on the ground:

"It is now established, by an unbroken series of adjudications in the English and American

---

4. Although our decisions for more than a century have said that Code (1860) Art. 28, § 7 was derived from Chapter 337 of the Laws of 1852, it seems more likely to have come from some wide ranging revision of assessment procedures.

Courts, that where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back in a Court of law, upon the ground that the payment was made under a misapprehension of the legal rights and obligations of the party." 4 Gill at 431

Curiously, the English and American cases relied upon, *Brisbane v. Dacres,* 5 Taunt. 143 (1813) ; *Clarke v. Dutcher,* 9 Cow. 674 (1824) ; *Mowatt v. Wright,* 1 Wend. 355 (1828), all stemmed from *Bilbie v. Lumley,* 2 East. 469 (1802) in which the rule was first announced and all dealt with private actions in contract, holding that voluntary payments made under a mistake of law are not recoverable. They rested their somewhat novel rationale on the idea that all persons have equal access to, if not equal knowledge of, the law. See 13 Williston, *Contracts* §§ 1581-4 at 535-55 (3d ed. 1970) ; 27 Am.Jur.2d *Equity* §§ 36-7 at 559-62 (1966) ; 75 A.L.R. 890 (1931). Additionally, in an early Supreme Court case involving recovery of taxes, *Brisbane v. Dacres, supra,* was recognized as authority, *Elliott v. Swartwout,* 35 U. S. (10 Pet.) 137, 9 L. Ed. 373 (1836).

This Court has consistently recognized the rule that money paid under a mistake of law ordinarily cannot be recovered in an action at law, nor can recovery ordinarily be had in equity, in the absence of special circumstances. 1 Poe, *Pleading and Practice* § 119-120A at 145-50 (6th Ed. Sachs 1970). See, for example, *Gross v. Stone,* 173 Md. 653, 664, 197 A. 137 (1938) ; *Oxenham v. Mitchell,* 160 Md. 269, 153 A. 71 (1931) ; *Louis Henri de Gallard, Prince de Bearn et Chalais v. Winans,* 111 Md. 434, 477, 74 A. 626 (1909), and particularly our more recent decisions in *Debelius Realty Co. v. Chassagne,* 260 Md. 109, 271 A. 2d 527 (1970) ; and *Baltimore & Annapolis RR Co. v. Carolina Coach Co.,* 206 Md. 237, 111 A. 2d 464 (1955), none of which involved the recovery of taxes.

In *Morris v. Mayor & City Council of Baltimore,* 5 Gill

244 (1847), Morris sought to recover taxes levied by the City on bank stocks owned by him. In denying recovery, the Court reaffirmed *Mayor & City Council of Baltimore v. Lefferman, supra,* 4 Gill 425, and concluded that recovery would have been denied even had the tax been unconstitutional and void.

In *Lester v. Mayor & City Council of Baltimore, supra,* 29 Md. 415, Lester had paid an assessment for the grading of a street, which had been determined in *Mayor & City Council of Baltimore v. Porter, supra,* 18 Md. 284, to have been illegally imposed. Recovery was denied. The Court, speaking through Judge (later Chief Judge) Alvey, said:

> "No principle is better settled than that where a person, with full knowledge of the *facts, voluntarily* pays a demand unjustly made upon him, though attempted or threatened to be enforced by proceedings, as appears to have been the case in this instance, it will not be considered as paid by compulsion, and the party thus paying, is not entitled to recover, though he may have protested against the unfounded claim at the time of payment made." (emphasis in original) 29 Md. at 418.

*Lefferman* and *Lester* remained viable and were cited with approval in *State v. Baltimore & Ohio R.R. Co.,* 34 Md. 344, 364 (1871); in *Sisson v. Mayor & City Council of Baltimore,* 51 Md. 83, 99 (1879); in *Bernei v. Mayor & City Council of Baltimore,* 56 Md. 351, 360 (1881); and in *George's Creek Coal & Iron Co. v. County Comm'rs of Allegany County,* 59 Md. 255, 260 (1883). *George's Creek* also indicated, by way of dicta, that taxes paid under a mistake of fact could be recovered, but held in this particular instance that an action of assumpsit would lie, because Code (1860) Art. 28 § 7 (the Act of 1852, *supra*) imposed on the commissioners the duty to repay the tax that they had erroneously levied, regardless of whether

they had been paid under mistake of law or mistake of fact, thus modifying the common law rule.

In *Mayor & City Council of Baltimore v. Hussey,* 67 Md. 112, 9 A. 19 (1887) where a non-resident plaintiff attempted to recover a tax improperly imposed on bonds of the City owned by her, the Court, citing *Lefferman* and *Lester,* said: "it is well settled, that an action will not lie to recover back the money, although it was paid by the appellee through a mistake as to her legal rights. This has been time and again decided by this court." 67 Md. at 115.

In *Monticello Distilling Co. v. Mayor & City Council of Baltimore,* 90 Md. 416, 45 A. 210 (1900) the Court held a Baltimore City tax on distilled spirits to be unconstitutional in a suit brought by the City to collect the tax. The Court's opinion, written by Chief Judge McSherry, took the precaution to point out, 90 Md. at 433, that the Court's determination that the Act was invalid could not be availed of by other taxpayers to recover taxes which they had voluntarily paid under the assumption that the Act was valid.

*Mayor & City Council of Baltimore v. Harvey,* 118 Md. 275, 84 A. 487 (1912) held that the common law rule as regards the recovery of taxes voluntarily paid under a mistake of law could be modified by the legislature, but voiced doubt that it could be changed by a City ordinance without express statutory authority.

The rigid common law rule began to be softened by statute, however, although in the absence of a statute permitting relief, taxes paid voluntarily under a mistake of law still could not be recovered, *Helser v. State,* 128 Md. 228, 231, 97 A. 539 (1916); *Mayor & City Council of Baltimore v. Home Credit Co.,* 165 Md. 57, 65, 166 A. 604 (1933); *Mayor & City Council of Baltimore v. Household Finance Corp.,* 168 Md. 13, 14, 176 A. 480 (1935). But even the statute offered no relief to a taxpayer who paid more than it should have as a result of its own mistake, *Tidewater Oil Co. v. Anne Arundel County,* 168 Md. 495, 178 A. 221 (1935). In *State Tax Comm'n v. Po-*

*tomac Elec. Power Co.*, 182 Md. 111, 32 A. 2d 382 (1943) recovery of a recordation tax paid under protest was permitted by virtue of the provision in the statute. However, in *Magness v. Loyola Fed. Sav. & Loan Ass'n, supra,* 186 Md. 569, 580, we reaffirmed the Maryland rule "that payment under protest, under threat and advertisement of sale, is a voluntary payment, because collection could be prevented by injunction," citing *Lester v. Mayor & City Council of Baltimore,* 29 Md. 415 and *Mayor & City Council of Baltimore v. Harvey,* 118 Md. 275, both *supra,* but noted that the Maryland rule had been frequently superseded by statute.

Finally, in *Wasena Housing Corp. v. Levay,* 188 Md. 383, 52 A. 2d 903 (1947), where a developer brought suit against the County Commissioners of Anne Arundel County for the recovery of taxes erroneously assessed, we again reaffirmed the rule of *Lester* and *Harvey,* and reiterated that a payment which is in fact voluntary will not be made compulsory by making it under protest, and that a taxpayer who could have challenged the validity of an assessment, but did not, was barred from recovering taxes levied on an assessment which it contended was excessive.

We have referred previously to Chapter 226 of the Laws of 1929 which first set up a comprehensive statutory scheme for the recovery of taxes erroneously or mistakenly paid. In §§ 152 and 153 of the 1929 Act, there was spelled out the manner in which recovery could be had from the State and the counties, including Baltimore City.

These provisions have survived after substantial amendment, as Code (1957, 1969 Repl. Vol.) Art. 81, §§ 213 and 214, to which was added a new § 215, enacted in 1941. It is § 214 (a), providing for a refund of taxes erroneously paid a county or Baltimore City which would be here controlling:

> "Whenever any person shall claim to have erroneously or mistakenly paid to the county com-

missioners of any county, or to the collector for such county, or to the Mayor and city council of Baltimore, or the collector for Baltimore City, *more money for ordinary county or city taxes* than was properly and legally chargeable to or collectible from such person, he may file with the collector in any county or the appeal tax court in Baltimore City, a written application for the refund thereof, and if approved by said collector, or the said appeal tax court the said county commissioners or the Mayor and city council of Baltimore shall levy and pay to such person any money that was so paid." (emphasis supplied).

The appellants are confronted by three considerable obstacles, none of which they can hurdle. In the first place, the tax which they paid was paid not to the State, but to Montgomery County. As a consequence, no relief is available under § 213. The alternative offered by § 214 contemplates the refund of *ordinary* taxes paid a county or the City, and ordinary taxes have been defined as "direct taxes imposed in respect of real or personal property," *Latrobe Brewing Co. v. Comptroller of the Treasury*, 232 Md. 64, 70, 192 A. 2d 101 (1963), which the transfer tax was not, see *Pittman v. Housing Authority of Baltimore City*, 180 Md. 457, 25 A. 2d 466 (1942). Finally, although Art. 81, § 215 encompasses the refund of special taxes erroneously or mistakenly paid to any State agency, it does not by its terms extend to the recovery of special taxes paid political subdivisions of the State.

In sum, the appellants have run the full circle, and since they cannot avail themselves of the Act of 1929 and its progeny, are back to where they would have been had the Acts of 1807, 1852 and 1929 never been passed: they have collided head on with the common law rule, as interpreted by our prior decisions, which precludes the recovery of taxes paid voluntarily under a mistake of law,

even if paid under protest and even if the statute under which the tax was paid is later determined to be unconstitutional or invalid. The only possible escape from this harsh rule is found in the case where the taxing statute itself provides for a refund; see, *e.g., State Tax Comm'n v. Potomac Elec. Power Co., supra,* 182 Md. 111, where an erroneously collected State recordation tax could be recovered because of the provision of what is now Code Art. 81, § 215, authorizing the refund of special taxes paid the State.

Montgomery County Code (1966) § 84-30 provided for such a refund in a limited class of cases.

> "Sec. 84-30. Refund of tax when transfer not effected.
>
> "In the event a transfer subject to the tax imposed by this article does not in fact occur after such tax has been paid and the instrument is thus not recorded as required by law with the clerk of the circuit court, or the transfer is set aside by judicial decree, the director of finance shall refund the tax paid, without interest; provided, that application in a form prescribed by the director is made within six months from payment of such tax, or within six months from the date of the judicial decree setting aside such transfer."

Since no statute afforded the appellants the relief they sought and because there was no right at common law under our prior decisions to recover money voluntarily paid under a mistake of law, the result reached by the lower court must be upheld.

*Judgment affirmed, costs to be paid by appellants.*