Dear Mr. Shipley:
You have requested our opinion whether a taxpayer is entitled to a refund under the following circumstances: In connection with a line-of-credit debt secured by a deed of trust, at the time of recording the taxpayer prepaid the recordation tax on the maximum amount of secured indebtedness, rather than on the amount of the initial advance only. Now the taxpayer, having in the aggregate borrowed less than the full credit line, seeks a refund of the portion of the tax attributable to the credit that was available, but unused. In this regard, you also have asked about the continuing validity of two opinions of this office, 43 Opinions ofthe Attorney General 353 (1958) and 60 Opinions of the AttorneyGeneral 671 (1975), which concluded that a refund of recordation tax prepaid on a line-of-credit deed of trust should be allowed when the taxpayer did not incur the amount of debt on which the tax was prepaid.
Our opinion is as follows: Recordation tax prepaid on a line-of-credit mortgage or deed of trust pursuant to § 12-105(f)(4) of the Tax-Property ("TP") Article is not refundable, even when the borrower does not incur the maximum amount of available debt. Therefore, with respect to the particular claim for refund that prompted your request for advice, the claim should be disallowed. To the extent that the 1958 and 1975 opinions would allow a refund under these circumstances, they are overruled.
 I The Claim for Refund
The general rule under TP, § 12-105(f)(1) is as follows: "[I]f the total amount of secured debt has not been incurred at the time of recording or filing the instrument of writing, the recordation tax applies only to the principal amount of the debt incurred at that time." Additional debt generally requires payment of additional tax within seven days. TP, § 12-105(f)(2). Under TP, § 12-105(f)(4), however, the taxpayer has the option of full prepayment: "The recordation tax may be computed and paid on the maximum outstanding principal sum, however expressed, that is stated to be secured by the instrument of writing, without regard to the amount of secured debt actually incurred, advanced, or readvanced."
You have asked us to consider how these provisions apply to the following set of facts: A corporation had recorded a deed of trust on its real property to secure repayment of a line-of-credit loan. At the time of recording of the deed of trust, the corporation prepaid the recordation tax on the maximum principal debt stated to be secured by the deed of trust. The initial advance reflected on the deed of trust was significantly less than the maximum amount secured. Less than a month later, the corporation filed a supplement to the credit line deed of trust to add another property as collateral. The supplement reflected a second advance taken under the line-of-credit loan. No additional recordation tax was paid upon the recording of the supplement, because the recordation tax was prepaid pursuant to TP, § 12-105(f)(4) at the time that the deed of trust was initially recorded.
Two months later, the corporation filed a claim for partial refund of recordation taxes paid on its deed of trust. In the claim, the corporation seeks a refund of all the tax paid, less the amount of tax payable with respect to the first and second advances that had been incurred. The claim for refund indicates that the corporation wishes to convert from the prepayment option under TP, § 12- 105(f)(4) to the pay-as-you-borrow option under TP, § 12-105(f)(1).
 II The 1958 and 1975 Opinions
In 43 Opinions of the Attorney General 353, Attorney General Sybert was asked whether "a corporation which has paid the recordation tax in an amount sufficient to cover the entire debt which may be incurred under a construction loan deed of trust is entitled to a refund if, in fact, no money has been advanced under the deed of trust." The tax, then codified in former Article 81, § 277, was imposed on instruments that conveyed title to real property, based on the consideration paid or to be paid, and on instruments that created liens or encumbrances on real or personal property, based on the principal debt secured. With respect to instruments creating liens or encumbrances on property to secure repayment of a debt, former Article 81, § 277(k) provided as follows:
 If the total amount of the debt which may become secured by any instrument securing a debt shall not have been incurred at the time such instrument is offered for record, the tax shall be computed solely in the principal amount of the debt then incurred and secured by such instrument. Before any debt is incurred, which is to be secured by an instrument previously recorded, the debtor shall file with the clerks of court with which such instrument has been recorded a duly verified statement showing the amount of such additional debt and shall pay the tax with respect thereto upon, but only upon, the amount of such additional debt so secured which has been incurred after May 31, 1937, and with respect to which such tax shall not theretofore have been paid, less the principal amount of any debt then outstanding and secured by such instrument which is to be paid or refunded out of the proceeds of such additional debt.
The opinion observed that "the Legislature only intended to tax the amount of debt actually incurred and secured" and that "[o]ften the full amount of the loan set out in the deed of trust is never paid to the borrower, and if required to pay the full tax in advance, [the borrower] would pay more than was ever due." 43Opinions of the Attorney General at 353 and 354. The opinion concluded that the corporation was entitled to a refund of the recordation tax that had been prepaid on the portion of the full loan amount that had not yet been incurred. The opinion noted that the borrower was required by the statute to file a verified statement of each amount of debt incurred and secured by the deed of trust and to pay recordation tax on each increment; the failure to do so would subject the borrower to criminal penalties. 43Opinions of the Attorney General at 354.
In 60 Opinions of the Attorney General 671, Attorney General Burch was asked whether transfer and recordation taxes applied to a conveyance of property on which the purchaser assumed an open construction loan mortgage. The opinion concluded that the taxes applied only to the amount of indebtedness already incurred and owed by the grantor, for which the grantee was assuming liability, but not to future advances that could be incurred by the grantee and secured by the open construction loan mortgage. 60 Opinionsof the Attorney General at 673-74. The continuing validity of that conclusion is not at issue. Relying on Attorney General Sybert's 1958 opinion without further analysis, Attorney General Burch further concluded that the grantor of the property would be entitled to a refund of the recordation tax "[t]o the extent that the grantor may have prepaid the recordation tax and not incurred some or all of the mortgage debt prior to the conveyance." 60Opinions of the Attorney General at 674. The continuing validity of that portion of the 1975 opinion is at issue.
 III Legislative History
In Chapter 732 of the Laws of Maryland 1984, the General Assembly amended former Article 81, § 277(k), to provide consumer borrows with an explicit choice about payment of recordation tax when a line of credit was not used at once:
 If the total amount of the debt which may become secured by any instrument securing a debt shall not have been incurred at the time such instrument is offered for record, the debtor shall pay the tax as follows:
 (1) The tax may be computed and paid on the principal amount of debt incurred at the time. Within 7 days after any additional debt is incurred, the debtor shall file with the clerk of the court with which the instrument has been recorded a verified statement of the amount of the additional debt and shall pay tax on that amount. To the extent that an additional advance is applied to repay existing debt secured by the instrument, the tax is not due on the advance; or
 (2) For a consumer borrower, . . . the tax may be computed and paid on the aggregate principal sum, whether expressed as the aggregate principal amount or the maximum credit line, stated on the face of the instrument. In this event, the total tax liability shall be satisfied by payment of the tax based on the aggregate principal sum, or the maximum credit line, regardless of the amount of secured debt actually incurred. The secured party shall inform the consumer borrower when the original extension of credit is granted of the 2 optional methods available under this section for the payment of taxes. If the debtor elects to pay any required tax as debt is incurred from time to time, the secured party shall inform the debtor when the original extension of credit is granted of the debtor's responsibility to pay that tax and the applicable penalties . . . for failure to do so.
The analysis of House Bill 174[1] in the legislative history file highlights the fact that the prepayment option affords the borrower two advantages. First, as the language of the statute clearly provides, by prepaying the tax on the maximum face amount at the time of recording, the borrower is able to fully satisfy the tax liability on the line of credit even though the aggregate debt over time (that is, the total of all advances and readvances) may greatly exceed the face amount secured. Second, the debtor is able to avoid the burden under the pay-as-you-borrow option of having to report within seven days and pay tax on each advance or readvance, on pain of potential fine or imprisonment for noncompliance.
The statute provided that "the debtor shall pay as follows" and then delineated the two options, requiring the debtor to make the choice between the two "at the time such instrument is offered for record." This language reflects the General Assembly's decision to preclude the choice from being made at a later date or changed once made. To encourage debtors to consider the prepayment option, the General Assembly afforded a potential tax savings as a benefit for prepaying the tax on the full face amount stated to be secured, regardless of how much money was borrowed in the aggregate under the credit line. Thus, if the mortgage secures up to $25,000 and tax is paid upon recording on the full face amount, even though no initial advance or only a small advance is taken at the time, the tax liability is totally satisfied by the prepayment; no more tax would be due even if the aggregate of all advances and readvances over the life of the credit line ultimately totaled much more than $25,000.
The legislative history also evidences an awareness of the prior Attorney General opinions discussed in Part II above. The legislative history file on Senate Bill 249 includes a September 6, 1983 letter from Assistant Attorney General Robert deV. Frierson to J. Basil Wisner, Chief Deputy Comptroller. The letter predated the 1984 enactment of the prepayment option; at the time the letter was written, former Article 81, § 277(k) contained no provision expressly authorizing prepayment, much less attaching certain advantages to prepayment. In the letter, Mr. Frierson concluded that prepayment was allowed; however, he advised that if the aggregate debt incurred ever exceeded the amount of debt on which the tax was prepaid, the borrower would be obliged to pay additional tax on the excess debt incurred. Mr. Frierson further advised as follows:
 In concluding that the borrower may prepay the tax due on the total principal amount of the mortgage, I am constrained to note that it is not totally free from doubt that a borrower who prepays is entitled to a refund if the additional debt incurred never equals the total amount of the mortgage. The 1975 Opinion [60 Opinions of the Attorney General 671] stated, on authority of a prior opinion [43 Opinions of the Attorney General 353 (1958)] without additional analysis, that a borrower prepaying the recordation fee under § 277(k) would be entitled to a refund of any debt under the mortgage not actually incurred. . . . Such a broad statement is necessarily circumscribed by enduring principles of tax law and statutory provisions governing tax refunds.
 As a general rule, all refunds of State taxes are matters of grace with the General Assembly, and statutory remedies are generally exclusive. . . . Under present law, the borrower would have to demonstrate at the very minimum that the recordation tax was paid "erroneously or mistakenly" within the three years of prepayment to qualify for a refund.
After this letter was written, and partly in reaction to the letter, House Bill 174 and Senate Bill 249 were introduced. In the bill analysis for House Bill 174, it was noted: "The Attorney General in an opinion on this subject matter as recently as last September stated `I am constrained to join my predecessors in this office in urging the General Assembly to modify the recordation tax statute. Legislative action at one time desirable has now become imperative.'"
Substantial portions of Article 81 were replaced by the enactment of the Tax-Property Article by Chapter 8 of the Laws of Maryland 1985. Former Article 81, § 277(k) was replaced by TP, § 12-105(f). In Chapter 599 of the Laws of Maryland 1988, TP, § 12-105(f) was amended to make the prepayment option available to all borrowers, not just consumer borrowers; the requirement that the secured party notify the borrower, at the time credit is extended, of the available tax payment options and the obligations inherent in the pay-as-you-borrow option was limited to consumer borrowers. No changes were made that affect the time at which the choice of options is to be exercised or the advantages that attach to the prepayment option.
The refund provision under TP, § 14-907 authorizes a claim for refund of recordation tax "that has been erroneously or mistakenly paid to or illegally or erroneously assessed or collected by the clerk of a circuit court."[2] Under TP, § 12-105(f)(4), when the prepayment option is voluntarily chosen by the borrower, it would hardly be arguable that the tax was "erroneously or mistakenly" paid. The tax was freely prepaid, presumably to derive the advantages that attach to prepayment under the statute. Since the law allows prepayment of the tax, the tax prepaid on a mortgage or deed of trust securing a line-of-credit loan can never be said to have been paid "erroneously or mistakenly" as a matter of law, unless the amount of tax is miscalculated by application of the wrong tax rate. While the prepayment option may not be as economically advantageous as the pay-as-you-borrow option under certain circumstances, it will always have the advantage of avoiding the inconvenience and potential penalty of the pay-as-you-borrow option. In any event, the borrower's economic miscalculation is not the kind of mistake that gives rise to a refund.
 IV Impact of Subsequent Legislation on Earlier Opinions
At the time the 1958 and 1975 opinions were written, the statute did not expressly authorize prepayment of the tax nor attach certain benefits, including potential tax savings, to the prepayment option. Prior to the 1984 enactment of the prepayment option, a borrower was not expressly authorized to prepay the tax before the debt was incurred and obtained no special advantage by doing so. As observed in the 1958 opinion, at that time "the Legislature only intended to tax the amount of debt actually incurred and secured." 43 Opinions of the Attorney General
at 353.
Under the law as amended in 1984 and 1988, the Legislature intends to tax the maximum amount of debt secured by the mortgage or deed of trust, if the borrower elects the prepayment option. The borrower is permitted under the law to make a choice and, presumably, will choose the option that best suits the borrower's circumstances. To assure that the choice is an informed one, the law requires the lender to explain the options to a consumer borrower; commercial borrowers are presumed to be more sophisticated and to have sources of advice, legal and financial, other than the lender. The choice must be made, however, at the time of recording of the mortgage or deed of trust. Once made, it is not subject to being rescinded. A borrower who elects the prepayment option may not subsequently switch to the pay-as-you-go option, or vice versa.
 V Conclusion
In summary, it is our opinion that recordation tax prepaid under TP, § 12-105(f)(4) is not refundable. We overrule 43 Opinionsof the Attorney General 353 (1958) and 60 Opinions of theAttorney General 671 (1975) to the extent that they provide otherwise.[3] The claim for refund of recordation tax for which you sought advice should be disallowed.
Very truly yours,
 ____________________ J. Joseph Curran, Jr. Attorney General
 ______________________ Julia M. Freit Assistant Attorney General
______________________ Jack Schwartz Chief Counsel Opinions and Advice
[1] The bill signed into law was Senate Bill 294. The bill file, however, also includes materials relating to House Bill 174, which was identical to Senate Bill 294.
[2] As stated in Rapley v. Montgomery County, 261 Md. 98,274 A.2d 124 (1971), under common law a tax voluntarily paid, albeit under a mistake of law, was not recoverable. The common law rule was statutorily amended by the enactment of tax refund provisions starting with Chapter 226 of the Laws of Maryland 1929, "which first set up a comprehensive statutory scheme for the recovery of taxes erroneously or mistakenly paid."261 Md. at 109. The provision allowing a refund of special taxes was added in 1941.
[3] For a summary of the standards that we apply in considering whether to overrule a prior opinion, see 72 Opinionsof the Attorney General 200 (1987).
 *Page 180