*Brutus 630, LLC v. Town of Bel Air, Maryland*
No. 67, September Term 2015

**Local Government Law – Taxes, Fees, and Other Charges – Refund Claims.** When the General Assembly has provided a statutory mechanism for a person to seek a refund of a payment made for an allegedly illegal tax, fee, or other charge, the common law voluntary payment doctrine does not bar a claim for a refund.

**Local Government Law – Taxes, Fees, and Other Charges – Refund Claims.** A person who pays a sewer connection fee imposed by a municipality and alleges that the fee is illegal or miscalculated may seek a refund of the payment under the refund statute that pertains to local governments. If the municipality denies the refund claim, the person may pursue an administrative appeal to the Maryland Tax Court under the same statute. Maryland Code, Local Government Article, §20-113 *et seq.*

Circuit Court for Harford County
Case No. 12-C-13-2116
Argued: March 7, 2016

IN THE COURT OF APPEALS
OF MARYLAND

No. 67

September Term, 2015

_____

BRUTUS 630, LLC

v.

TOWN OF BEL AIR, MARYLAND

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by McDonald, J.
Watts and Hotten, JJ., dissent.

_____

Filed: June 23, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Petitioner Brutus 630, LLC ("Brutus 630") seeks a refund of certain sewer connection charges that it asserts were wrongly charged by Respondent Town of Bel Air ("Town"). The question before us is not whether Brutus 630 gets a refund, but rather whether it gets a day in court – more precisely, a day before the administrative agency known as the Maryland Tax Court – to decide its claim for a refund.

Brutus 630, the assignee of the entity that paid the charges, seeks a refund pursuant to Maryland Code, Local Government Article ("LG"), §20-113 *et seq.,* a statute that provides a mechanism for a person to seek a refund of "a tax, fee, charge, interest, or penalty" that is "erroneously, illegally, or wrongfully" assessed by or paid to a local government. Under that statute, a refund applicant who is dissatisfied with the disposition of a refund claim by the local government may pursue an administrative appeal of that decision in the Maryland Tax Court.

In this case, the Town rejected Brutus 630's refund claim. On appeal, the Tax Court concluded that it lacked jurisdiction to consider the claim because the claim was not authorized by the refund statute and, accordingly, even if the Town had miscalculated or illegally imposed the charges, the common law voluntary payment doctrine precluded Brutus 630 from obtaining a refund.

We hold that Brutus 630 may pursue its refund claim under the refund statute, that its claim is not barred by the voluntary payment doctrine, and that the Maryland Tax Court has jurisdiction to consider the appeal. We express no opinion on whether the claim should be granted.

# I

## Background

### A. *Refund of Money Paid to a Local Government*

On occasion, a person who has paid money to the State or a local government may seek a refund of the payment on the ground that the payment was made erroneously or without a basis in law. Under the common law, the default rule, known as the voluntary payment doctrine, was that a payment voluntarily made to the State or local government could not be recovered – a rule that some courts have characterized as "harsh." There are some common law exceptions to the rule and statutory provisions that override the rule by allowing a claim for a refund. Thus, one who seeks a refund of a payment to the government must be able to point to a common law exception to the voluntary payment doctrine or to a statute that authorizes such a claim.

### 1. Voluntary Payment Doctrine

*Origin of the Doctrine*

The voluntary payment doctrine is a principle developed under the English common law. Subject to certain exceptions, a person who voluntarily pays money to another person under a mistake of law may not bring a common law action to recover the money. *See Dua v. Comcast Cable of Maryland, Inc.*, 370 Md. 604, 646-47, 805 A.2d 1061 (2002). The doctrine was originally based on the maxim that "ignorance of the law is no excuse."[1] *See*

---

[1] The Latin phrase used by some courts is *ignorantia juris non excusat.* A commentator has identified the English decision in *Bilbie v. Lumley*, 2 East 469 (1802), as the first explication of the voluntary payment doctrine. Colin E. Flora, *Practitioner's*

*generally* Colin E. Flora, *Practitioner's Guide to the Voluntary Payment Doctrine*, 37 S. Ill. U. L.J. 91 (2012). The doctrine has been adopted or acknowledged in some form in every American jurisdiction. *Id.*, Table 1 (Index of Cases by Jurisdiction).

"Ignorance of the law is no excuse" may be an apt rationale when applied to a murderer ignorant of the degrees of homicide, a fraudster whose scheme unintentionally falls within range of the theft statute, or a towed motorist who neglects to read a street sign before parking. It seems less compelling when applied to a payment required by a law that is murky in its coverage or complex in its computation. Perhaps for that reason, courts have searched for other policies to justify the voluntary payment doctrine: (1) providing certainty to the payee that allows the payee to use the funds received; (2) encouraging discourse, rather than litigation, over disputed charges; (3) penalizing a payor's negligence; (4) allocating the risk of late-discovered mistakes; (5) not allowing the payor a litigation advantage in the choice of when to sue and whether to be plaintiff or defendant in a controversy over a disputed charge. Flora, *supra*, at 94-97.

---

*Guide to the Voluntary Payment Doctrine*, 37 S. Ill. U. L.J. 91, 93 (2012). In that case, an insurance underwriter sought to recover a payment that the underwriter had made to a policyholder for the capture of a ship. The underwriter had paid the policyholder, even though the underwriter had a letter with information that negated the underwriter's liability under the policy. The English court inquired of the underwriter's counsel "whether he could state any case where if a party paid money to another voluntarily with a full knowledge of all the facts of the case, he could recover it back again on account of his ignorance of the law." 2 East at 470. Counsel apparently could provide no such authority, and the court held that the underwriter could not recover because "[e]very man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance might not be carried. It would be urged in almost every case." *Id.* at 472.

*The Voluntary Payment Doctrine in Maryland*

This Court applied the voluntary payment doctrine in a series of cases in the 19th century. *See City of Baltimore v. Lefferman*, 4 Gill 425, 431 (1846) ("It is now established, by an unbroken series of adjudications in *English* and *American* courts, that where money is voluntarily and fairly paid, with a full knowledge of the facts and circumstances under which it is demanded, it cannot be recovered back in a court of law, upon the ground, that the payment was made under a misapprehension of the legal rights and obligations of the party.") (emphasis in original); *Baltimore & Susquehanna R.R. Co. v. Faunce*, 6 Gill 68, 76 (1847) ("It is rightly said, that a party cannot recover money voluntarily paid with a full knowledge of all the facts, although no obligation to make payment such existed. If informed of the law which exempts him, he must abide by the consequences of his folly, in abandoning the protection it afforded him – if ignorant, he was bound to acquire more information."); *Lester v. City of Baltimore*, 29 Md. 415, 419-20 (1868).

*Application of the Doctrine to Payments Made to the Government*

While the common law principle originated in cases involving private parties, it has also been applied in cases of mistaken payment of taxes or other government charges. *Dua*, 370 Md. at 646; *see, e.g.*, *White v. Prince George's County*, 282 Md. 641, 653-54, 387 A.2d 260 (1978) (voluntary payment doctrine barred an action to recover recordation taxes unless the statutory remedy applied); *Morris v. Mayor & City of Baltimore*, 5 Gill 244 (1847) (challenging taxes levied on bank stocks). The voluntary payment doctrine has been held to bar recovery even when the payment is made under an unconstitutional statute

4

or ordinance. *See Apostol v. Anne Arundel County*, 288 Md. 667, 672, 421 A.2d 582 (1980) ("the rule that no action lies to challenge the validity of a tax paid under a mistake of law, except for any refund sanction specifically provided by the Legislature, has been applied consistently by this Court, regardless of the nature of the legal attack mounted or the type of mistake of law claimed."); *Lefferman*, 4 Gill at 430-37 (party was barred from recovering excess money paid to Baltimore City, even though the ordinance requiring payment was unconstitutional); *accord Morris*, 5 Gill at 248; *Monticello Distilling Co. v. Mayor and City of Baltimore*, 90 Md. 416, 45 A. 210 (1900).

*Exceptions*

The courts have recognized some common law exceptions to the voluntary payment doctrine. Chief among the exceptions are cases involving payments made as a result of fraud, mistake of fact, or duress. Flora, *supra*, at 98-109; *see Furman v. Lanahan*, 159 Md. 1, 5, 149 A. 465 (1930) ("[w]here money has been paid upon misrepresentation, under a mistake of fact, or under circumstances amounting to duress, it may be recovered in an appropriate action," but where money has been paid voluntarily with a full knowledge of the facts, it cannot be recovered); *Baltimore & Susquehanna R.R. Co.*, 6 Gill at 77 ("A payment cannot well be said to be made voluntarily when it is made in consequence alone of a false view of the facts."); s*ee also Dua*, 370 Md. at 646 (common law actions to recover excessive interest).

5

In addition, to mitigate the perceived harshness of the doctrine, the General Assembly has enacted several laws that authorize State and local agencies to refund mistaken, erroneous, or illegal payments in certain circumstances.

2. The Refund Statute

Among the legislation that the General Assembly has enacted to mitigate the voluntary payment doctrine is a statute providing for refunds of certain payments made to local governments, including municipalities. It is currently codified at Maryland Code, Local Government Article ("LG"), §20-113 *et seq.*[2] The statute provides that a claim for a refund by one who:

> (1) Erroneously pays to a county or municipality a greater amount of tax, fee, charge, interest, or penalty than is properly payable; or
>
> (2) Pays to a county or municipality a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner.

LG §20-113. The claim is to be filed with the tax collector for the local government, along with supporting documents, within three years of the date that the payment was made. LG §§20-114, 20-115. The tax collector is to conduct an investigation and hold a hearing on

---

[2] At the time that a claim for a refund was made in this case, the statute was codified as Maryland Code, Article 24, §9-710 *et seq.* In 2013, it was recodified without substantive change in its current location in the new Local Government Article as part of code revision. Chapter 119, Laws of Maryland 2013. *See* footnote 14 below. To avoid confusion, we will refer to the statute by its current codification or as the "refund statute," unless the context requires that we use an earlier codification.

the claim, if requested by the claimant, and notify the claimant of the determination of the claim. LG §20-116(a), (c).[3]

The claimant may appeal the determination of the local government to the Maryland Tax Court within 30 days after the municipality notifies the claimant of its determination. LG §20-117(a). If no notice is given within six months of the filing of the claim, the claimant may treat the claim as being disallowed and pursue an appeal in the Tax Court. LG §20-117(b).

Despite its name, the Maryland Tax Court is an administrative unit within the executive branch of State government. Maryland Code, Tax-General Article ("TG"), §3-102; *see Frey v. Comptroller*, 422 Md. 111, 137, 29 A.3d 475 (2011). The appeal is to be conducted according to the Tax Court's procedures. LG §20-117(a); TG §13-514 *et seq.* Any party to the Tax Court proceeding may seek judicial review of a final order of the Tax Court according to the procedures of the State Administrative Procedure Act for contested cases. TG §13-532; Maryland Code, State Government Article, §§10-222, 10-223.

## B. *Factual and Procedural History*

This case arose out of a dispute between Brutus 630 and the Town concerning the imposition and calculation of certain sewer connection fees imposed by the Town. The Tax Court did not make findings of fact, as there was no evidentiary hearing in that forum

---

[3] The claim may not be allowed unless the claimant has paid all other charges due to the State, county, or municipality and the chief fiscal officer of the local government approves the claim. LG §20-116(b).

and the parties did not agree to a stipulation of facts. However, the essential facts for our purposes do not appear to be in dispute.

### 1. Sewer Connection Fees Charged by the Town

The Town has relied on Harford County for the treatment of sewage generated within the Town pursuant to a series of agreements between the Town and the County.[4] According to the decision of the Town's hearing officer in this case, the Town collects various charges related to the use of the County sewer system and pays those charges to the County. Pertinent to this case, under the most recent agreement, the Town has agreed to collect and pay to the County user charges, equivalent area connection charges, sewer connection charges, and other related charges in return for the County's provision of sewage treatment service to Town residents. That agreement describes the purpose for the charges in the following terms: (1) the user charge defrays the cost of transmission and treatment of the sewage; (2) the equivalent area connection charge constitutes the Town's proportional share of the cost of existing sewage treatment facilities; and (3) the sewer connection charge defrays the cost of future replacement and expansion of the sewage treatment facilities. The charges are imposed on property owners through Town

---

[4] At one time, the Town operated its own sewage treatment system. Beginning in 1969, the Town entered into a series of agreements with the County to treat the Town's sewage. *See* Maryland Code, Environment Article, §9-705(a) (authorizing municipality to contract with other governmental entities for sewage treatment). The most recent agreement, entered into in 1988, included the charges outlined in the text. The 1988 agreement has since been amended several times, primarily to adjust the amount of the user charge.

ordinances. *See* Bel Air Code, §397-14 *et seq*. This case concerns a dispute over the calculation and payment of the third category of charges – sewer connection charges.

## 2. The Charges in Dispute

Brutus 630 is a real estate developer that developed certain property in the Town as a community of 274 condominiums. As part of the project, Brutus 630 sold lots to NVR, Inc., a builder, for the construction of the buildings. As a condition of obtaining building permits from the Town during the period from February 2004 through July 2011, NVR paid the Town a total of $1,186,627 in sewer connection fees. NVR assigned its interest in a potential refund of those sewer connection charges to Brutus 630.[5]

## 3. Denial of Refund Application

On February 12, 2012, Brutus 630 filed an application for a refund of the sewer connection charges with the Town's Director of Finance, its tax collector. Citing the refund statute, Brutus 630's application contended, among other things, that the Town lacked legal authority for the sewer connection charges and that the Town had incorrectly computed the charges. The Director of Finance held a hearing, after which she denied Brutus 630's refund application in a written decision issued May 11, 2012. As an initial matter, the Director of Finance opined that the refund statute did not apply to the claim and that the

---

[5] During a hearing in the Tax Court, the co-manager of Brutus 630 stated that it acquired the land, divided it into lots, recorded the lots, and then conveyed those lots to NVR. NVR deducted the cost of acquiring the building permits from the total value of the consideration paid for the lots. Because it had deducted that cost from the contract, it assigned its right to receive a refund for the sewer connection fees to Brutus 630.

9

Town was considering the claim only as a "matter of courtesy."[6]  On the merits of the refund request, the Director of Finance concluded that the Town had legal authority to collect the sewer connection charges, that it had correctly calculated the amount of the sewer connection charges, and that it had remitted that amount to the County pursuant to the terms of the most recent agreement with the County.

4.  Administrative Appeal to Tax Court

On June 7, 2012, Brutus 630 filed an appeal with the Maryland Tax Court reiterating, in some detail, its arguments that the Town had exceeded its authority in assessing the sewer connection charges and that, in any event, the Town had erred in its computations.  The Town filed a motion to dismiss, asserting that the Tax Court was without jurisdiction to hear the merits of the appeal because the sewer connection charges were not taxes, but rather regulatory fees charged for services.  Brutus 630 and the Town also filed cross-motions for summary judgment on the merits of the refund claim.

After conducting two hearings for legal argument,[7] the Tax Court decided that it was unable to address the motions for summary judgment and granted the Town's motion

---

[6] The Director of Finance also stated that, even if the refund statute applied, much of the claim would be barred by the three-year limitations period in that statute.  That issue is not before us in this case.

[7] The Tax Court held an initial hearing on September 26, 2012, but said that it did not feel comfortable ruling on the motions without a factual record of some kind, particularly as it could not determine whether any facts were in dispute for purposes of summary judgment.  It postponed its ruling in order to allow the parties to agree on a stipulation of facts or to present witnesses.  The parties appeared for a second hearing on May 20, 2013, and informed the Tax Court that they were unable to agree to such a

to dismiss on the ground that it lacked jurisdiction because the sewer connection charges were not regarded as taxes or charges "in the nature of taxes" and therefore did not come within the purview of the refund statute. The Tax Court also concluded that, even if the sewer connection charges were illegal or miscalculated, Brutus 630 would be barred from seeking a refund by the voluntary payment doctrine because there is no statutory remedy available which permits a party to seek a refund for sewer connection charges that were paid voluntarily. On June 13, 2013, the Tax Court issued an order granting the motion to dismiss.

5. Judicial Review

Brutus 630 then sought judicial review of the Tax Court decision in the Circuit Court for Harford County. The Town filed a motion to dismiss, which the Circuit Court granted on December 12, 2013. Brutus 630 noted a timely appeal to the Court of Special Appeals, which affirmed in an unreported opinion. We granted Brutus 630's petition for a writ of *certiorari* to decide whether the Maryland Tax Court has jurisdiction under the refund statute to consider the appeal of the Town's denial of the refund application.

**II**

**Discussion**

We review a decision of an administrative agency like the Maryland Tax Court by "looking through" the decisions of the Circuit Court and Court of Special Appeals and

---

stipulation of facts. The Tax Court then proceeded to rule on the motion to dismiss and did not address the motions for summary judgment on the merits of the refund claim.

evaluating directly the decision of the agency. *Green v. Church of Jesus Christ of Latter Day Saints*, 430 Md. 119, 132, 59 A.3d 1001 (2013). Although we would accord deference to any fact findings of the Tax Court, it made no findings here. (As noted above, while there may be some dispute over the facts concerning the merits of the refund claim, there do not appear to be any disputed facts pertinent to the question of the Tax Court's jurisdiction.) In any event, we accord less deference to the Tax Court's legal conclusions than to fact findings. *Green,* 430 Md. at 132-33.

### A. *Whether a Claimant May Seek a Refund of a Sewer Connection Charge under the Refund Statute*

In its oral ruling, the Tax Court opined that it did not have jurisdiction of the refund claim because the sewer connection charges in question are not "taxes or fees in the nature of taxes, but rather … charges for the sale, [of] the service, or a commodity." Based on our review of the refund statute text, its legislative history, and the prior decisions of this Court, this appears to be an excessively narrow conception of the refund statute. Moreover, the authority relied upon by the Tax Court in its oral ruling is distinguishable from this case. Finally, other arguments advanced by the Town for a narrow construction of the refund statute lack merit.

### 1. Construing the Refund Statute

As always, we start with the text of the particular provision at issue and its context in the statute. We consider the legislative history of the statute to resolve ambiguities or to confirm what we derive from the text. Along the way, we may consider the consequences

of alternative readings for consistency with the legislative purpose. *See Blue v. Prince George's County*, 434 Md. 681, 689, 76 A.3d 1129 (2013).

*Text*

The text of the refund statute does not limit its scope to taxes. As noted above, it provides that a claimant may seek a refund of a "fee, charge, interest or penalty," as well as taxes, paid to a local government when there is an erroneous overpayment or when the "fee, charge, interest, or penalty" (or tax) is "erroneously, illegally, or wrongfully assessed or collected." LG §20-113. Dictionaries commonly define "charge" as a "price, cost, or expense" and a "fee" as a "charge or payment for labor or services." *See* Black's Law Dictionary (10th ed. 2014); *see also* Merriam-Webster's Collegiate Dictionary (11th ed.), *available at* http://www.merriam-webster.com/dictionary/fee [http://perma.cc/C5S5-EMUU] *and* http://www.merriam-webster.com/dictionary/charge [http://perma.cc/6ZY8-6WB5]. The sewer connection fee at issue in this case would qualify as a "charge" or a "fee" under the ordinary definitions of those terms. Nowhere in this statute does the language limit its reach to governmental charges "in the nature of a tax."

The current placement of the refund statute in the Maryland Code does not otherwise suggest a limitation on its scope. The refund statute pertaining to local governments now appears in a subtitle of Title 20 of the Local Government Article. For the most part, the other provisions of that title of the Local Government Article relate to taxes, but that title is not focused exclusively on taxes – other provisions of Title 20 also relate to impact *fees* and user *fees*. *See, e.g.,* §§20-608, 20-801. It also seems safe to say that no one would

13

suggest that the refund statute pertains *only* to the particular taxes that happen to appear in Title 20 of the Local Government Article. Nor does the refund statute appear limited to the particular fees that happen to appear in that title. Thus, the placement of the refund statute in that particular title does not indicate that it is limited to tax refunds.

*Legislative History*

The legislative history of the statute, as acknowledged in the prior decisions of this Court, confirms that the General Assembly did not intend to limit the refund statute to taxes or to require fine distinctions about what other charges or fees imposed by a local government could be equated to taxes.[8]

While the Legislature has long authorized taxpayers to seek refunds of taxes paid in error,[9] the general refund statute applicable to this case can be traced to one first enacted in 1929. Chapter 226, Laws of Maryland 1929. That legislation contained two refund provisions. One, then codified as Maryland Code, Article 81, §152, allowed for refunds of taxes "erroneously or mistakenly" paid to the State. The other, then codified as Article, 81, §153, allowed for similar refunds of taxes "or other charges" mistakenly paid to a county or to Baltimore City. In 1935, the Legislature added "other charges" to the State

---

[8] The legislative history of the refund statute, as it pertains to local governments, is also discussed in some detail in *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971) and *Vytar Associates v. City of Annapolis*, 301 Md. 558, 565-68, 483 A.2d 1263 (1984).

[9] As the Court noted in *Rapley,* the General Assembly has authorized refund claims related to taxes since at least the early 1800s. *Rapley,* 261 Md. at 103-4.

14

refund provision. Chapter 407, Laws of Maryland 1935. With some amendments not pertinent for our purposes, the two provisions were recodified as Article 81, §§161, 162 in the 1939 Maryland Code.

In 1941, the Legislature restructured the refund provisions to provide separate sections for refunds of "ordinary" State taxes, local government taxes, and "special taxes … or other fees or charges" paid to the State, and added provisions governing the procedures for the investigation, determination and payment of such claims. Chapter 701, §§3-4, Laws of Maryland 1941 *enacting* Article 81, §§161-162E. Over the next few years the Legislature made a number of amendments to those provisions, including clarification that the refund provision for "other fees or charges" pertained to payments to "any State agency." *See* Chapter 123, Laws of Maryland 1943. In the course of this restructuring, however, the reference to refunds for "other fees or charges" was dropped from the county refund provision.[10] The refund provisions were eventually recodified as Article 81, §§213 through 219 of the 1957 version of the Maryland Code.[11] Together, these refund provisions appeared to provide a broad remedy for erroneous overpayments of taxes, fees or charges to the State. There remained, however, a gap in the county provision – *i.e.*, the absence of a refund provision with respect to counties other than for payment of "ordinary taxes."

---

[10] Given the dearth of legislative history from that period, we do not know the reasons for this change.

[11] They had been codified as Article 81, §§213 through 217 of the 1951 version of the Maryland Code.

15

That gap was critical to a 1971 decision of this Court. *Rapley v. Montgomery County*, 261 Md. 98, 274 A.2d 124 (1971).

In *Rapley*, the appellants had paid under protest a transfer tax assessed by Montgomery County in connection with their acquisition of a tract of land in that county. They then sued the county for repayment of the transfer tax on the grounds that the transfer tax was discriminatory, unreasonable, and arbitrary. The Court of Appeals did not reach the merits of those contentions and affirmed dismissal of the suit on the ground that the voluntary payment doctrine precluded the appellants from seeking a refund. The Court explained that none of the refund statutes in Article 81 pertained to the transfer tax paid by the appellants to the county.[12] As a result, the Court concluded, "they have collided head on with the common law rule" – *i.e.*, the voluntary payment doctrine. 261 Md. at 110. Although the Court stated that the result was compelled by the existing refund statutes – or lack thereof – it characterized the basis of its holding as a "harsh rule." *Id.* at 111.

In an apparent response to *Rapley*, the General Assembly expanded the refund statutes to extend to claims like the one made in that case. Chapter 644, Laws of Maryland 1971. That law, which was enacted within weeks of the *Rapley* decision, provided that "the refund claim procedures generally applicable to State special taxes or other fees or charges shall likewise be applicable to county and municipal special taxes or other fees or

_____

[12] The Court explained that the provisions relating to payments to the State or its agencies provided no relief, as the appellants had paid the transfer tax to the county. The provision concerning refund of "ordinary taxes" paid to a county did not pertain to payments of transfer taxes. 261 Md. at 110.

16

charges." *Id.*; *see also* Fiscal Note for Senate Bill 171 (1971) ("This bill would provide that the refund claim procedures used by the State generally also would apply to the counties and municipalities as they pertain to special taxes or other fees, charges, penalties or interest paid."). As is evident, the 1971 legislation also extended the refund provision to municipalities.

Since the 1971 amendment, the Legislature has not substantively amended the refund statute, although it has been recodified several times as part of code revision. The portion of the statute pertaining to the State and its agencies now appears in Maryland Code, Tax-General Article ("TG"), §13-901 *et seq.*[13] As indicated earlier, the portion of the statute pertaining to local governments now appears in LG §20-113 *et seq.*[14]

This Court had occasion to consider the refund statute as applied to a municipality in *Vytar Associates v. City of Annapolis*, 301 Md. 558, 483 A.2d 1263 (1984). That case concerned license fees paid by landlords in the City of Annapolis. A prior decision of the Court had held that the City's collection of license fees prior to the General Assembly's

---

[13] Chapter 2, Laws of Maryland 1988.

[14] This portion of the statute was recodified in 1988 as Maryland Code, Article 24, §9-710 *et seq.* Chapter 2, Laws of Maryland 1988. In 2013, it was recodified as part of the new Local Government Article. Chapter 119, Laws of Maryland 2013.

Prior to the 1988 legislation, the refund statute required the State, county, or municipal "agency" to investigate the merits of a refund claim. In the 1988 recodification, the term "tax collector" was substituted for "agency" in delineating the local government's responsibilities in responding to a claim. The Revisor's Note to the 1988 legislation indicates that this substitution was not intended to effect any substantive change in the statute. Chapter 2, Laws of Maryland 1988 at pp. 596-97, 677.

17

passage of enabling legislation for the fees was unconstitutional. The landlords sought refunds of those fees from the City, the City denied the claims, and the landlords appealed. This Court held that the license fees fell within the category of "other fees or charges" that were "erroneously or mistakenly paid." 301 Md. at 563-64. Accordingly, the Court held that the payments could be recovered pursuant to a claim under the refund statute and that the Tax Court could consider an appeal of the City's denial of the refund claims. The Court explicitly rejected the City's contention that the phrase "other fees or charges" in the refund statute should be construed narrowly. *Id*. at 564 n. 4.

More recently, this Court considered the scope of the refund statute in relation to the voluntary payment doctrine in *Bowman v. Goad,* 348 Md. 199, 703 A.2d 144 (1997). In that case, the plaintiff brought suit to recover allegedly excessive fees charged by sheriffs for service of process in motor vehicle prosecutions. This Court affirmed dismissal of the suit on the ground that the plaintiff was required to pursue the administrative remedy provided by the refund statute. The Court noted that the voluntary payment doctrine would preclude payment of a refund in an action brought under the common law. However, citing both the State and local government sections of the refund statute, the Court observed that "the General Assembly has now provided broad administrative refund remedies covering *every type of tax, fee, or charge improperly collected by a Maryland governmental entity."* 348 Md. at 204 (emphasis added). Accordingly, the Court held that the exclusive remedy for seeking a refund of excessive charges for service of process was the refund statute. *Id.*

18

This Court has subsequently reiterated the broad nature of the refund statutes. *See*

*Halle Development, Inc. v. Anne Arundel County*, 371 Md. 312, 328-30, 808 A.2d 1280

(2002) (opining that a land developer could have invoked the local government refund

statute to pursue a refund claim of allegedly illegal school waiver fees paid to a county

pursuant to the county's adequate public facilities ordinance); *Frankel v. Board of Regents*,

361 Md. 298, 308, 761 A.2d 324 (2000) (opining that the State agency refund provision "is

applicable when a state college or university charges a student more for tuition than is

legally payable"). Neither in *Bowman* nor in those subsequent cases has this Court required

that a fee or charge be tax-like in nature.

*Summary*

The text of LG §20-113 allows a person who has made an allegedly erroneous or

illegal payment of any tax, fee, charge, interest, or penalty imposed by a municipality an

opportunity to file an application for a refund. The legislative history of that statute

demonstrates that, while the predecessor of that statute was once limited to "ordinary taxes"

of counties, it was extended more than 40 years ago to other fees and charges imposed by

counties, as well as municipalities. Thereafter, it has been construed by this Court as a

broad remedy "covering every type of tax, fee or charge improperly collected by a

Maryland governmental entity."

2.     The Tax Court Decision

The Tax Court adopted a narrow view of the refund statutes. In an oral ruling

explaining its reasons for granting the Town's motion to dismiss, the Tax Court relied on

19

a 1996 decision of the Court of Special Appeals – a decision that preceded *Bowman* and most of the other cases described above – and on the common law voluntary payment doctrine.

*Whether the* West Capital *Decision Controls*

In its oral ruling, the Tax Court cited the decision of the Court of Special Appeals in *West Capital Assoc., LP v. City of Annapolis*, 110 Md. App. 443, 677 A.2d 655 (1996), for the proposition that a claim for refund of sewer connection charges is not within the purview of the refund statute and that, therefore, the Tax Court lacked jurisdiction over the appeal in this case. In our view, *West Capital* does not govern the resolution of the issue in this case for at least two reasons: (1) the payment in dispute in *West Capital* was not a "tax, fee, charge, interest, or penalty" imposed by a municipality, but rather a contractual payment to the City of Annapolis acting in a proprietary capacity; and (2) even if language in the *West Capital* decision could be construed to exclude the sewer connection charges in this case from the purview of the refund statute, such an interpretation would be at odds with the broad construction placed on the current version of the refund statute, clearly a remedial measure, by this Court in *Vytar*, *Bowman*, *Halle,* and *Frankel.*

In *West Capital*, a developer owned land just outside the City of Annapolis. The developer entered into an agreement with the City under which the City would provide water and sewer service to the property in return for payments that were to be equal to: (1) the rate for water and sewer service in effect for customers within the City; (2) connection charges customarily charged by the City; (3) capital facility charges and assessments

20

customarily charged by the City, and (4) an annual fee in an amount equivalent to real estate taxes if the developer's property had been annexed by the City.

After making payments under the agreement for six years, the developer refused to pay the portion that, under the agreement, was keyed to real estate taxes, and demanded a refund of payments previously made. The City refused to refund the prior payments and sued the developer for breach of contract. The developer then filed a petition for a refund under the refund statute[15] and filed a motion to dismiss or to stay the breach of contract action on the theory that the Tax Court had primary jurisdiction of the dispute. The circuit court denied the developer's motion and ultimately granted summary judgment in favor of the City on its contract claim and against the developer on the developer's counterclaim for a refund.

On appeal, the Court of Special Appeals agreed with the circuit court. Before it reached the merits of the circuit court's ruling on the City's contract claim, the court discussed briefly whether the developer's counterclaim was required to be litigated exclusively in the Tax Court as a refund claim. In the course of agreeing that the contract action was appropriately litigated in the circuit court, the intermediate appellate court opined that "[w]ater and sewer charges imposed by municipalities are generally not regarded as taxes or fees in the nature of taxes but rather as charges for the sale of a

---

[15] At that time, the refund statute was codified at Article 24, §9-710 *et seq.*

commodity"[16] – language that the Tax Court paraphrased in its ruling in this case. Nevertheless, the essence of the court's reasoning in *West Capital* was that the rates were based on the consumption or provision of the service *under a contract* with the City in its proprietary capacity[17] and that the Tax Court lacked jurisdiction to resolve that contractual dispute. 110 Md. App. at 450-51.

Regardless of some of the language used by the court in *West Capital*, it is evident that the court's focus was on the contractual nature of the payments by the developer, rather than on the municipal charges or fees on which the amount of the contract payments was based. This is particularly clear when one considers that the dispute was triggered by the developer's refusal to make a payment that was equated to real estate *taxes*. There is no suggestion in *West Capital* that real estate taxes are outside the refund statute – *i.e.,* that

---

[16] 110 Md. App. at 450.

[17] As many commentators have noted, identifying the line that courts sometimes attempt to draw between activities of a municipality in a proprietary capacity and those of a municipality in a governmental capacity has proven elusive. *See, e.g.,* 2A McQuillin, Municipal Corporations §53.72 (3rd ed.) ("[the governmental-proprietary] distinction has resulted in inconsistent and highly artificial judicial distinctions in its application to municipal activities. The inequities and incongruities resulting from attempts to fit particular conduct into one or the other of these two categories has made the doctrine unsound and unworkable"); *Indian Towing Co. v. United States*, 350 U.S. 61, 65 (1955) (declining to apply the distinction in the context of the Federal Torts Claim Act and characterizing the distinction as "inherently unsound"). However, the label "proprietary" seems most apt when a municipality undertakes to provide services beyond its boundaries pursuant to a contract, as was the case in *West Capital*. *See City of Rockville v. Goldberg,* 257 Md. 563, 264 A.2d 113 (1970); *Home Owners Loan Corp. v. Baltimore City*, 175 Md. 676, 3 A.2d 410 (1939). By contrast, in this case, the sewer connection charges were assessed as to property within the Town's borders pursuant to a Town ordinance.

the developer could not have sought a refund if the developer's property had been annexed by the City and the charges in dispute had in fact been real estate taxes (as opposed to contractual payments that equaled hypothetical real estate taxes).

*Whether the Voluntary Payment Doctrine Applies*

The Tax Court also held that, even if it had jurisdiction over the refund claim and even if the claim were meritorious, the voluntary payment doctrine would bar a refund in this case. Our conclusion that the Tax Court had jurisdiction over the administrative appeal necessarily rests on a conclusion that a claim may be made under the refund statute, which is a statutory exception to the voluntary payment doctrine.[18]

3.      Other Arguments Advanced by the Town

The Town advances two arguments not explicitly relied upon by the Tax Court to argue that the refund statute should be construed narrowly.[19] First, it relies on a canon of

---

[18] In its discussion of the voluntary payment doctrine, the Tax Court cited *Washington Suburban Sanitary Commission v. C.I. Mitchell & Best Co.,* 303 Md. 544, 495 A.2d 30 (1985) for the proposition that the voluntary payment doctrine precluded a refund of invalid sewer connection charges. However, this Court's decision in the *Mitchell* case was based on its conclusion that the WSSC was not a State agency covered by the refund statute. In response to that decision, the General Assembly enacted a refund statute that explicitly applied to the WSSC, much as it had enacted a refund statute applicable to charges by local governments in the wake of the *Rapley* decision. *See Washington Suburban Sanitary Commission v. Lafarge North America, Inc.*, 443 Md. 265, 283 n. 19, 116 A.3d 493 (2015).

[19] The Tax Court cited neither the principle of *ejusdem generis* nor TG §3-103 in its ruling. A court may not uphold an agency decision for reasons other than those stated by the agency. *United Steelworkers of America v. Bethlehem Steel Corp.,* 298 Md. 665, 679, 472 A.2d 62 (1984). While the Tax Court did not explicitly rely on these arguments, they both support the "reason" the Tax Court dismissed the appeal – *i.e.,* that the refund statute

23

construction known as *ejusdem generis*[20] – essentially, when general terms follow a specific term in a list, the general terms are construed to refer to things similar in nature to the specific term. *Tribbit v. State*, 403 Md. 638, 656, 943 A.2d 1260 (2008). Second, the Town argues that another statute in a different article of the Maryland Code that generally describes the Tax Court's jurisdiction – TG §3-103 – should be construed to narrow the scope of the local government refund statute.

*Whether the Principle of* Ejusdem Generis *Requires a Narrow Construction*

The Town argues that, under the principle of *ejusdem generis,* the references to "fee," "charge," "interest," and "penalty" in the refund statute should be considered general terms qualified by the term "tax" that also appears in the list of items for which a refund may be requested. However, the principle of *ejusdem generis* is simply a rule of construction to deal with uncertainty and is not to be used to defeat legislative intent. *See Blake v. State*, 210 Md. 459, 462, 124 A.2d 273 (1956); *Gooch v. United States*, 297 U.S. 124, 128 (1936). Here, as noted above, the Legislature intended a broad remedy that covers all types of taxes, fees, and charges imposed by a local government. *See Bowman*, 348 Md. at 204.

Even if the remedial legislative purpose were not evident, the presence of the term "tax" together with "fee" and "charge" in a list of payments that might be required by a

---

extends only to tax-like charges. Accordingly, we consider whether these arguments support the Tax Court's construction of the refund statute.

[20] The phrase is Latin for "of the same kind or class."

24

government entity does not mean that the meanings of the terms "fee" and "charge" are colored by the presence of the word "tax" in the same list. For example, in *Benson v. State*, 389 Md. 615, 887 A.2d 525 (2005), the Court construed a similar list of terms that appears in Article 14 of the Maryland Declaration of Rights. That constitutional provision states "[t]hat no aid, charge, tax, burthen or fees ought to be rated or levied, under any pretense, without the consent of the Legislature." The Court interpreted this provision as encompassing five types of payments. 389 Md. at 634-35 (explaining that an "aid" is defined as an act of helping, a "charge" is an expense or cost, a "burthen" is an obligation imposed upon a person or property, a "tax" is a charge imposed ordinarily for public purposes, and a "fee" is a charge for labor or services). Given that refunds may be sought for governmental charges that violate Article 14 and similar constitutional proscriptions,[21] it would be odd to construe the terms "fee" and "charge" more narrowly in LG §20-113.

Finally, the primary case that the Town cites in support of this argument actually states that water and sewer charges would ordinarily be encompassed in the terms "charges" or "fees," even when those terms are preceded in a listing by the word "taxes." *See Mass Transit Administration v. Baltimore County Revenue Auth.*, 267 Md. 687, 696-97, 298 A.2d 413 (1973) (because water and sewer charges "are closely related to levies in

---

[21] This was the case in *Vytar Associates v. City of Annapolis*, 301 Md. 558, 483 A.2d 1263 (1984), which concerned a refund claim for license fees that had been determined to violate Article XI-E, §5 of the Maryland Constitution – a provision that refers to the collection of fees as well as taxes. *See Campbell v. City of Annapolis*, 289 Md. 300, 424 A.2d 738 (1981).

25

the nature of taxes or assessments" such charges would be included in a listing of "any ordinary or special taxes, assessments, and charges…" unless explicitly excluded).[22]

*Whether TG §3-103 Requires a Narrow Construction of LG §20-113 et seq.*

The Town argues that TG §3-103(a), a statute that generally sets forth the jurisdiction of the Maryland Tax Court, indirectly limits the scope of the refund statute.[23] TG §3-103(a) provides as follows:

---

[22] That case concerned whether the Mass Transit Administration ("MTA") buses were exempt from paying tolls on bridges operated by the Baltimore County Revenue Authority. It was clear that the MTA was not exempt under the trust indenture that related to the financing of those bridges, but the question remained whether a statute that exempted the MTA from "any ordinary or special taxes, assessments, and charges except water and sewer charges" also exempted the MTA from the county bridge tolls. The circuit court held that the statute did provide an exemption, but that the exemption was unconstitutional as an impairment of the bondholders' vested rights under the trust indenture.

The Court of Appeals looked to the legislation that had enacted the statutory exemption and came to a different conclusion. It noted that the title of the bill that enacted the exemption stated that the purpose of the legislation was to exempt the MTA from *taxation* and that the heading given to the provision by the Legislature was "Tax Exemption." 267 Md. at 695-96. The Court indicated that if the exemption were extended to bridge tolls, the exemption would be of doubtful constitutionality, given the requirements of the State Constitution that legislation concern one subject and that that subject be described in the title of the bill. Maryland Constitution, Article III, §29. (It is perhaps notable that the legislation that included "other fees and charges" in the refund statute pertaining to municipalities did not have such limiting language in its title. *See* Chapter 644, Laws of Maryland 1971.).

The Court of Appeals went on to comment that the principle of *ejusdem generis* also supported construing the general terms in the statute to refer to taxes or things in the nature of taxes. Finally, the Court observed that the specific exclusion of water and sewer charges from the exemption statute was because such charges are "closely related to levies in the nature of taxes or assessments." *Id*. at 696-97.

[23] In its brief, the Town recasts one of the questions presented in this case as:

26

The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any tax issue, including:

> (1) the valuation, assessment, or classification of property;
>
> (2) the imposition of a tax;
>
> (3) the determination of a claim for refund;
>
> (4) the application of an abatement, reduction, or revision of any assessment or tax; or
>
> (5) the application for an exemption from any assessment or tax.

TG §3-103(a). The Town parses this statute to say that "[t]he Tax Court has jurisdiction to hear appeals … *about any tax issue*, including … (3) the determination of a claim for refund…" (emphasis added). Although TG §3-103 does not explicitly refer to LG §20-113 *et seq.,* the Town imputes the reference to "any tax issue" into the local government refund statute as a limitation on its scope.

There is no question that the Tax Court has jurisdiction of refund claims relating to taxes. That responsibility is given to the Tax Court not only by TG §3-103(a), but also by LG §20-117 with respect to appeals of refund claims relating to local government taxes.

---

Does Section 3-103(a) of the Tax General Article of the Annotated Code limit the jurisdiction of the Maryland Tax Court to appeals concerning tax issues and thus require that appeals authorized by [the refund statute] involving refund claims filed under [the refund statute] be limited to claims involving taxes or charges in the nature of taxes?

27

But LG §20-113 does not limit claims under the local government refund statute to taxes. And, in stating that a refund claimant "may appeal" to the Tax Court, neither does LG §20-117 limit that jurisdiction of the Maryland Tax Court to tax refund claims. LG §20-117 unequivocally permits a claimant to appeal a denial of that claimant's application for a refund relating to *fees* and *charges*, as well as taxes, provided that the claimant meets certain procedural conditions. Under the Town's reading of the statutes, the authority conferred on the Tax Court in LG §20-117 would be superfluous of the authority provided by TG §3-103. We are not inclined to read statutes to render them superfluous. *See Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426 (2002).

This Court has previously rejected an argument that a predecessor statute of TG §3-103(a) limited the jurisdiction of the Tax Court. *See Vytar Associates, supra,* 301 Md. at 562 n.2. In that case, the Court stated that the language concerning the Tax Court's jurisdiction that appeared in former Article 41 was "descriptive only" and that it did not expand or restrict the jurisdiction conferred by the various provisions of Article 81, including the refund statute. The Town discounts this statement in *Vytar* on the ground that the case, decided in 1984, preceded the 1988 enactment of TG §3-103(a) as part of the (then) new Tax-General Article. However, in recodifying various provisions from Article 41 and Article 81 as TG §3-103, the code revisors made clear that the recodification was not intended to effect a substantive change in the law. *See* Chapter 2, Laws of Maryland 1988 at pp. 72-74.

In any event, the legislative history of the Tax Court and the refund statute confirms that the Tax Court's appellate jurisdiction is co-extensive with the various types of refund claims authorized by the refund statute. From its inception, the Maryland Tax Court has had responsibility for adjudicating appeals of claims for refunds under the refund statute. When the General Assembly created the Tax Court in 1959,[24] it gave that agency responsibility for hearing appeals under the various provisions of the refund statute, which were then codified together in Article 81 of the Maryland Code. *See* Maryland Code, Article 81, §§217, 247A (1957, 1960 Supp.). As recounted earlier,[25] the provisions relating to refunds from State agencies and local governments were later recodified in different articles, but the Tax Court retained responsibility for adjudicating administrative appeals of refund claims arising from both provisions. *See* TG §3-103(a)(3), LG §20-117. Indeed, the reference to refund claims was included in TG §3-103(a) by the code revisors in the 1988 creation of the Tax-General Article – even though refund claims did not appear in the particular predecessor statutes on which TG §3-103 was based – in recognition of the Tax Court's longstanding jurisdiction over refund claims. Chapter 2, Laws of Maryland 1988 at pp. 72-74. Contrary to the Town's argument, no substantive change in the Tax Court's jurisdiction was intended. Thus, TG §3-103(a)(3) does not express a limitation on the

---

[24] *See* Chapter 757, Laws of Maryland 1959.

[25] *See* Part II.A.1 of this Opinion above.

jurisdiction referenced in LG §20-117, but rather is a recognition of the authority granted by the latter statute.

Had there been a conflict between TG §3-103(a) and LG §20-117, we would give effect to the more specific statute, which in this case is LG §20-117. *See Suter v. Stuckey*, 402 Md. 211, 935 A.2d 731 (2007). But there is no conflict, and there is no reason why TG §3-103(a) would limit the Maryland Tax Court's authority under LG §20-117.

## B.    *Summary*

Because the plain language of the refund statute, the legislative purpose underlying the statute, and this Court's prior cases interpreting the statute all favor a broad interpretation of the statute, we conclude that the refund statute would encompass a claim for the sewer connection charges imposed by the Town in this case. Under LG §20-117, Brutus 630 may pursue an appeal in the Tax Court of the Town's denial of its claim. This conclusion does not mean that Brutus 630's claim is either correct or timely, but only that it has a forum in which to be heard.

## III

### Conclusion

For the reasons stated above, we hold:

1 – A person who has paid a sewer connection fee imposed by a municipality and alleges that the fee is illegal or miscalculated may seek a refund from the municipality under LG §20-113 *et seq.*

2 – The voluntary payment doctrine does not bar such a refund claim.

3 – The Maryland Tax Court has jurisdiction under LG §20-117 of an administrative appeal of a denial of such a refund claim.

In the context of this case, the Town properly provided a forum for the refund claim asserted by Brutus 630. The Maryland Tax Court now has the responsibility in the administrative appeal to decide whether the Town correctly denied that claim. The Tax Court's decision on the merits will be subject to judicial review, should either party wish to pursue it. As should be evident, our decision does not concern the merits of Brutus 630's refund claim, but rather whether there is a forum in which that claim can be adjudicated. It would be inappropriate for us to express an opinion on the merits of that claim at this juncture.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR HARFORD COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE MARYLAND TAX COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.**

IN THE COURT OF APPEALS

OF MARYLAND

No. 67

September Term, 2015

_____

BRUTUS 630, LLC

v.

TOWN OF BEL AIR, MARYLAND

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Dissenting Opinion by Watts, J., which Hotten,
J., joins

_____

Filed:  June 23, 2016

*Battaglia, J., now retired, participated in the
hearing and conference of this case while an
active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section
3A, she also participated in the decision and
adoption of the majority opinion.

Respectfully, I dissent. I would hold that the Maryland Tax Court ("the Tax Court") correctly concluded that it lacked jurisdiction to adjudicate this case; accordingly, I would not reach the issue of whether the voluntary payment doctrine barred Brutus 630, LLC ("Brutus"), Petitioner, from seeking a refund of the sewer connection charges.

The question that is key to this case's resolution is whether the Tax Court has jurisdiction to resolve a claim for a refund of sewer connection charges.

The Majority answers this question in the affirmative by relying on Md. Code Ann., Local Gov't (2013) ("LG") § 20-113, the "refund statute," which states in its entirety:

> A claim for a refund may be filed with **the tax collector who collects the tax, fee, charge, interest, or penalty** by a claimant who:
>
> (1) erroneously pays to a county or municipality a greater amount of tax, fee, charge, interest, or penalty than is properly and legally payable; or
>
> (2) pays to a county or municipality a tax, fee, charge, interest, or penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner.

(Emphasis added). In turn, LG § 20-117(a) provides a claimant with a right to appeal to the Tax Court the tax collector's final determination of the claim for a refund.[1]

The Majority reasons that LG §§ 20-113 and 20-117 grant the Tax Court the

---

[1]LG § 20-117(a) states:

Except as provided in subsection (b) of this section, a claimant may appeal to the Maryland Tax Court, within 30 days after the date on which a notice under [LG] § 20-116(c) [] is given, in the manner allowed in Title 13, Subtitle 5, Parts IV and V of the Tax – General Article.

In turn, LG § 20-116(c) states: "The tax collector shall give the claimant written notice of: (1) the final determination of the claim for refund; and (2) any delay in the payment of an allowed claim." (Paragraph breaks omitted).

authority to resolve a claim for a refund of sewer connection charges. See Maj. Slip Op. at 27. The Majority disagrees with what it repeatedly characterizes as a "narrow" interpretation of LG §§ 20-113 and 20-117 by the Tax Court and the Town of Bel Air ("the Town"), Respondent. See Maj. Slip Op. at 12, 19, 23.

The majority opinion states that LG §§ 20-113 § 20-117 are to be broadly interpreted. Indeed, the Majority states as follows: "LG § 20-117 unequivocally permits a claimant to appeal a denial of that claimant's application for a refund relating to *fees* and *charges*, as well as taxes, provided that the claimant meets certain procedural conditions." Maj. Slip Op. at 27 (emphasis in original). According to the Majority, under the Town's reading of the statutes, LG § 20-117 would be "superfluous" to Md. Code Ann., Tax-Gen. (1988, 2010 Repl. Vol.) ("TG") § 3-103. Maj. Slip Op. at 27. With this approach, the Majority emphasizes that LG § 20-117 applies to fees and services and implies that recovery of the sewer connection charge is based on the charge being a fee or service rather than a tax.

I respectfully disagree with the Majority. I concur with the Tax Court that, by its plain language, LG § 20-113 is limited to a claim for a refund of "taxes or fees in the nature of taxes[.]" By requiring a claimant to file a claim for refund with "the tax collector who collects the tax, fee, charge, interest, or penalty[,]" LG § 20-113 makes clear the General Assembly's intent for the refund process to apply only where a claimant seeks a refund of taxes or fees in the nature of taxes.

I agree with the Court of Special Appeals's conclusion that the sewer connection charges "do not constitute a tax or a charge in the nature of a tax and, therefore, the Tax

Court was without jurisdiction to hear Brutus'[s] appeal." Sewer connection charges, in particular, do not fall under the category of levies to which LG § 20-113 applies. As the Tax Court pointed out, sewer connection charges are not "taxes or fees in the nature of taxes[,] but rather [] charges for the sale[ of a] service, or a commodity." Thus, LG §§ 20-113 and 20-117 do not apply in this case.

Instead, here, the governing statute is TG § 3-103(a), which limits the Tax Court's jurisdiction to appeals that concern tax issues, stating:

> The Tax Court has jurisdiction to hear appeals from the final decision, final determination, or final order of a property tax assessment appeal board or any other unit of the State government or of a political subdivision of the State that is authorized to make the final decision or determination or issue the final order about any **tax issue**, including:
>
> (1) the valuation, assessment, or classification of property;
>
> (2) the imposition of a tax;
>
> (3) the determination of a claim for refund;
>
> (4) the application for an abatement, reduction, or revision of any assessment or tax; or
>
> (5) the application for an exemption from any assessment or tax.

(Emphasis added). Thus, by its plain language, TG § 3-103(a) limits the Tax Court's jurisdiction to appeals about "any tax issue including . . . the determination of a claim for refund[,]" *i.e.*, to hear an appeal about a tax refund claim.

TG § 3-103(a) circumscribed the language in former Md. Code Ann., Art. 24, §§ 9-710 ("A claim for refund may be filed with the tax collector who collects the tax, fee, charge, interest, or penalty by a claimant[.]") and 9-712 ("The tax collector shall: []

- 3 -

investigate each claim for refund . . . [and] give the claimant notice of[] the determination of the claim for refund[.] . . . [W]ithin 30 days after the date on which a notice is mailed, a person who is aggrieved by the action in the notice may appeal to the Maryland Tax Court[.]").[2] TG § 3-103(a) limits those appeals to refund claims concerning taxes, fees, or charges in the nature of taxes. In other words, TG § 3-103(a) does not permit an appeal of a tax collector decisions for claims for refunds of charges that are not related to "any tax issue[.]" Indeed, it seems beyond question that appeals to the Tax Court must involve a matter involving taxes.

As such, the question is whether sewer connection charges are a tax or charge in the nature of a tax such that the Tax Court would have jurisdiction to hear Brutus's appeal. As the Town points out, sewer connection charges are used to pay a debt that is incurred in construction of sewer treatment facilities servicing the properties assessed for those charges, and are not like tax assessments by the local government. Indeed, as the Town notes, the sewer connection charges in this case were required by agreements between Harford County and the Town; in other words, the charges were not required by statute (although they are authorized by Md. Code Ann., Envir. (1982, 2014 Repl. Vol.) ("Envir.") § 9-722(a)). The Town explains: "Maryland law makes plain that the sewer connection charges authorized by [Envir. §] 9-722(a), and collected by the Town and paid to Harford County for debt services, are fees for service and are neither taxes nor fees or charges in

---

[2]At the time that Brutus sought a claim for a refund, LG §§ 20-113 and 20-117 were codified at Md. Code Ann., Art. 24, §§ 9-710 *et seq.* In 2013, Md. Code Ann., Art. 24, §§ 9-710 *et seq.* was recodified without substantive change in the new Local Government Article. See 2013 Md. Laws 572, 574, 1596-99 (Vol. I–II, Ch. 119, H.B. 472).

- 4 -

the nature of the taxes that could be challenged under either" TG § 3-103(a) or Md. Code Ann., Art. 24, §§ 9-710 or 9-712. Moreover, as the Court of Special Appeals correctly pointed out, other jurisdictions have taken a similar approach concerning water and sewer charges and have held that such connection charges/fees are not taxes. In my view, this Court should do the same.

For the above reasons, respectfully, I dissent.

Judge Hotten has authorized me to state that she joins in this opinion.